ELIOT NAT. BANK v. GILL, Collector of Internal Revenue.

(District Court, D. Massachusetts.   December 29, 1913.)

No. 395.

1. INTERNAL REVENUE (§ 9*)—SPECIAL EXCISE TAX ON CORPORATIONS—COMPUTATION OF NET INCOME TAXES.

Tariff Act Aug. 5, 1909, c. 6, § 38, par. 2, 36 Stat. 112 (U. S. Comp. St. Supp. 1911, p. 946), which provides that the net income of a corporation, on which the special excise tax imposed by the section shall be assessed, shall be ascertained "by deducting from the gross amount of the income * * * (4) all sums paid by it within the year for taxes imposed under the authority of the United States or of any state, * * *" does not entitle a bank located in Massachusetts to deduct from its gross income taxes assessed on its shares of stock by the city or town in which it is located under Rev. Laws Mass. c. 14, §§ 9–18, which require the bank to pay such taxes, but give it a lien on the shares and interest of the stockholder for the amount paid; such taxes being clearly imposed upon the shareholder and not upon the bank or its property.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. § 9.*]

2. INTERNAL REVENUE (§ 25*)—SPECIAL EXCISE TAX ON CORPORATIONS—"FALSE RETURN"—POWER OF COMMISSIONER TO AMEND.

Under the provision of Tariff Act Aug. 5, 1909, c. 6, § 38, par. 5, 36 Stat. 112 (U. S. Comp. St. Supp. 1911, p. 950), relating to the imposition and collection of special excise taxes on corporations, which authorizes the Commissioner of Internal Revenue in case a return made by a corporation is "false or fraudulent" to amend such return at any time within three years and assess and collect the correct amount of tax, an incorrect return is "false" although made in good faith under a mistake of law, and the commissioner has power to amend such a return even after the tax under the original return has been paid.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 72, 73; Dec. Dig. § 25.*

For other definitions, see Words and Phrases, vol. 3, p. 2670.]

3. INTERNAL REVENUE (§ 25*)—SPECIAL EXCISE TAX ON CORPORATIONS—POWER TO AMEND RETURN.

The provision being that in case of such false or fraudulent return the commissioner shall make an amended return "upon the discovery thereof at any time within three years after said return is due," the corrected assessment is not required to be made within the three years.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 72, 73; Dec. Dig. § 25.*]

4. TIME (§ 9*)—INCLUDING LAST DAY—STATUTES.

The general rule for the construction of statutes, which require an act to be done within a specified period from or after a day named, is to exclude such day and to include the last day of the specified period.

[Ed. Note.—For other cases, see Time, Cent. Dig. §§ 11–32;  Dec. Dig. § 9.*]

At Law.   Action by the Eliot National Bank against James D. Gill, Collector of Internal Revenue.   Judgment for defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Edwin H. Abbot, Jr., of Boston, Mass., for plaintiff.
Asa P. French, U. S. Atty., and James S. Allen, Jr., Asst. U. S. Atty., both of Boston, Mass., for defendant.

BINGHAM, Circuit Judge. This action was brought by the Eliot National Bank against James D. Gill, collector of internal revenue for the Third district of Massachusetts, in the superior court for the county of Suffolk, and was afterwards transferred into this court by writ of certiorari.

The declaration contains three counts for money had and received. In the first count plaintiff seeks to recover $338.25, with interest from March 15, 1913. In the second and third counts for $369 and $377.20, respectively, with interest from April 28, 1913. The sums sought to be recovered represent certain taxes paid by the plaintiff for the years 1909, 1910, and 1911, under the provisions of the Corporation Tax Law of August 5, 1909, 36 Stat. L. c. 6, § 38, pp. 112–117 (U. S. Comp. St. Supp. 1911, p. 946). The case is here upon an agreed statement of facts with authority in the court to draw such inferences from the facts agreed upon as may be warranted.

[1] The plaintiff is a national bank, located and doing business in the city of Boston. On May 1, 1909, and on April 1, 1910 and 1911, the shares of the capital stock of the bank were assessed by the city of Boston, under the provisions of Revised Laws of Massachusetts, c. 14, §§ 9–18, inclusive, and under the provisions of St. Mass. 1909, c. 490, pt. 3, §§ 11–20. The tax assessed by the city upon the shares of the bank for 1909 was $33,825; for 1910, $36,900; and for 1911, $37,720.

Returns were made by the plaintiff to the collector of internal revenue for the three years in question for the assessment of the corporation tax, and taxes based upon such returns were levied and paid. On or before February 27, 1913, the Commissioner of Internal Revenue discovered that in making these returns the bank had deducted from its gross income the amount of taxes stated above and paid by it each year to the city of Boston. Thereupon the commissioner, having made or caused to be made an amended return, assessed an additional tax for each year upon the bank upon the amounts so deducted, which additional taxes the bank paid under protest. This suit is brought to recover the sums so paid.

The federal statute imposing the tax provides:

"Sec. 38. First. That every corporation, joint-stock company or association, organized for profit and having a capital stock represented by shares, and every insurance company, now or hereafter organized under the laws of the United States or of any state or territory of the United States or under the acts of Congress applicable to Alaska or the District of Columbia, or now or hereafter organized under the laws of any foreign country and engaged in business in any state or territory of the United States or in Alaska or in the District of Columbia, shall be subject to pay annually a special excise tax with respect to the carrying on or doing business by such corporation, joint-stock company or association, or insurance company, equivalent to one per centum upon the entire net income over and above five thousand dollars received by it from all sources during such year, exclusive * * * " of certain amounts therein specified, which may be deducted.

"Second. Such net income shall be ascertained by deducting from the gross amount of the income of such corporation, joint-stock company or association, or insurance company received within the year from all sources, * * * (fourth) all sums paid by it within the year for taxes imposed under the authority of the United States or of any state or territory thereof, or imposed by the government of any foreign country as a condition to carrying on business therein."

The first question presented is whether the bank had the right under this clause to deduct the taxes levied under the provisions of Massachusetts Revised Laws, c. 14, §§ 9–18, which it had paid to the city of Boston.

The Revised Laws of Massachusetts, in chapter 14, provide:

"Sec. 9. All the shares of stock in banks, whether of issue or not, existing by authority of the United States or of the commonwealth, and located within the commonwealth, shall be assessed to the owner thereof in the city or town in which such bank is located, and not elsewhere, in the assessment of state, county and town taxes, whether such owner is a resident of said city or town or not. They shall be assessed at their fair cash value on the first day of May, first deducting therefrom the proportionate part of the value of the real estate belonging to the bank, at the same rate as other moneyed capital in the hands of citizens is by law assessed. The persons who appear from the books of the banks to be owners of shares at the close of the business day last preceding the first day of May shall be deemed to be the owners thereof.

"Sec. 10. Every such bank shall pay the tax so assessed to the collector or other person authorized to receive the same at the time when other taxes in the city or town become due. If not so paid, said tax, with interest thereon at the rate of twelve per cent. per annum from the day when it became due, may be recovered from said bank in an action of contract by the collector of such city or town.

"Sec. 11. The shares of such banks shall be subject to the tax paid thereon by the corporation or by the officers thereof, and the corporation and the officers thereof shall have a lien on all the shares in such bank and on all the rights and property of the shareholders in the corporate property for the payment of said taxes.

"Sec. 12. The cashier of every such bank shall make and deliver to the assessors of the city or town in which it is located, on or before the tenth day of May in each year, a statement under oath showing the name of each shareholder, with his residence and the number of shares belonging to him at the close of the business day last preceding the first day of May, as the same then appeared on the books of said bank. If the cashier fails to make such statement, said assessors shall forthwith obtain a list of the names and residences of shareholders and of the number of shares belonging to each. They shall, forthwith, upon obtaining such statement or list, transmit a copy thereof to the tax commissioner; and shall, immediately upon the ascertainment of the rate per cent. upon the valuation of the total tax in such city or town for the year, give to said commissioner written notice thereof, and also of the amount assessed by them upon the shares of each bank located therein.

"Sec. 13. Said commissioner shall thereupon determine the amount of the tax assessed upon shares in each of said banks which would not be liable to taxation in said city or town according to the provisions of chapter twelve; and such amount shall be a charge against said city or town. He shall, in like manner, determine the amount of tax so assessed upon shares which would be so liable to taxation in each city or town other than that in which the bank is located; and such amount shall be a credit to each city or town. He shall forthwith give notice in writing by mail or at their office to the assessors of each city or town thereby affected of the aggregate amount so charged against and credited to it; and they may within ten days after notice of such determination appeal therefrom to the board of appeal constituted under the provisions of section sixty-five."

"Sec. 18. The assessors of a city or town; upon request of any person resident therein who is the owner of any shares in such banks or other corporations which, under the provisions of clauses nine and ten of section five of chapter twelve, would be entitled to exemption from taxation, shall give to him a certificate stating such fact; and the treasurer of such city or town, upon request therefor, and the deposit with him of such certificate, shall pay over to such owner the amount so collected in respect of such shares, immediately upon the allowance made to such city or town under the provisions of this chapter."

There can be no doubt but that the clause in the federal statute providing for the deduction from the gross income of a corporation of "all sums paid by it within the year for taxes imposed under the authority of  *  *  *  any state" means taxes imposed upon it and not upon some other person or corporation. No other reasonable conclusion could be drawn from the language used.

This being so, it is contended by the plaintiff that, inasmuch as under the provisions of the Massachusetts statute the bank is compelled to pay a tax assessed upon the shares of the stockholders, or, in case of default, is made liable to an action of contract for such tax, with interest at the rate of 12 per cent., the tax is in legal effect assessed upon the bank, and that the bank upon paying it discharges its own obligation, and is therefore entitled to have it deducted in ascertaining its net income in the assessment of the federal tax. But this is clearly not the true construction of the Massachusetts statute, and is not the one which has been placed upon it either by the state or federal courts. The bank, having paid the tax, is under the statute given "a lien on all the shares in such bank and on all the rights and property of the shareholders in the corporate property for the payment of said taxes." And, while the statute does not expressly give the bank a right of action over against the individual stockholders to recover from each of them their proportionate part of the tax which it has paid, it is evident that as the bank in the payment of the tax acts under compulsion of law and not voluntarily, and the payment is for the benefit of the stockholders, that a contract will be implied in law entitling it to recover from each stockholder his proportionate part of the tax, as money paid by the bank for the stockholder's benefit. Home Savings Bank v. Des Moines, 205 U. S. at page 518, 27 Sup. Ct. 576, 51 L. Ed. 901. In that case it was said that:

"The tax assessed to shareholders may be required by law to be paid in the first instance by the corporations themselves as the debt and in behalf of the shareholders, leaving to the corporation the right to reimbursement of the tax paid from their shareholders, either under some express statutory authority for their recovery or under the general principle of law that one who pays the debt of another at his request can recover the amount from him."

Then, again, in Van Allen v. Assessors, 3 Wall. 573, 18 L. Ed. 229, it was held that:

"The tax on the shares is not a tax on the capital of the bank. The corporation is the legal owner of all the property of the bank, real and personal; and within the powers conferred upon it by the charter, and for the purposes for which it was created, can deal with the corporate property as absolutely as a private individual can deal with his own.  *  *  *  The interest of the

shareholder entitles him to participate in the net profits earned by the bank in the employment of its capital, during the existence of its charter, in proportion to the number of his shares; and, upon its dissolution or termination, to his proportion of the property that may remain of the corporation after the payment of its debts. This is a distinct independent interest or property, held by the shareholder like any other property that may belong to him. Now, it is this interest which the act of Congress has left subject to taxation by the states, under the limitations prescribed."

In addition to the provisions of the statute giving the bank, upon payment of the tax, a lien upon the shares and all the rights and property of the shareholders in the corporate property for the payment of the tax, and in addition to the implied obligation of the stockholders to repay the bank the money so paid, there are other provisions in the statute which require the tax when collected to be credited to the towns in which the stockholders reside (section 13); and that allow stockholders who are entitled to exemptions (section 18) to recover from the city or town in which they reside the money paid by the bank to discharge their proportion of the tax. All this makes it certain that the tax is upon the stockholder and not upon the bank, and that in paying it the bank does so as agent.

My conclusion, therefore, is that as the taxes paid to the city of Boston in the years in question were not assessed upon the bank but upon the shareholders, and were paid for their benefit, the bank is not entitled to have them deducted in ascertaining its net income, as was done in its returns to the Commissioner of Internal Revenue in the years 1909, 1910, and 1911.

[2] Was the Commissioner of Internal Revenue vested with authority to amend the original returns of the bank and assess additional taxes thereon for the years 1909, 1910, and 1911; he not having discovered the error in the returns until after the taxes assessed on those returns had been paid?

In the third subdivision of section 38 of the Corporation Tax Law, it is provided:

"Third. * * * said tax shall be computed upon the remainder of said net income of such corporation, * * * for the year ending December thirty-first, nineteen hundred and nine, and for each calendar year thereafter; and on or before the first day of March, nineteen hundred and ten, and the first day of March in each year thereafter, a true and accurate return under oath or affirmation of its president, vice president, or other principal officer, and its treasurer or assistant treasurer, shall be made by each of the corporations, * * * subject to the tax imposed by this section, to the collector of internal revenue for the district in which such corporation, * * * has its principal place of business, * *. * in such form as the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, shall prescribe, etc.

"Fourth. Whenever evidence shall be produced before the Commissioner of Internal Revenue which in the opinion of the commissioner justifies the belief that the return made by any corporation, * * · * is incorrect, or whenever any collector shall report to the Commissioner of Internal Revenue that any corporation, * * * has failed to make a return as required by law, the Commissioner of Internal Revenue may require from the corporation, * * * making such return, such further information with reference to its capital, income, losses, and expenditures as he may deem expedient; and the Commissioner of Internal Revenue, for the purpose of ascertaining the correctness of such return, or for the purpose of making a return where none

has been made, is hereby authorized, by any regularly appointed revenue agent specially designated by him for that purpose, to examine any books and papers bearing upon the matters required to be included in the return of such corporation, * * * and to require the attendance of any officer or employé of such corporation, * * * and to take his testimony with reference to the matter required by law to be included in such return. * * * Upon the information so acquired the Commissioner of Internal Revenue may amend any return or make a return where none has been made.

"Fifth. All returns shall be retained by the Commissioner of Internal Revenue, who shall make assessments thereon; and in case of any return made with false or fraudulent intent, he shall add one hundred per centum of such tax, and in case of a refusal or neglect to make a return or to verify the same as aforesaid he shall add fifty per centum of such tax. In case of neglect occasioned by the sickness or absence of an officer of such corporation, * * * required to make said return, or for other sufficient reason, the collector may allow such further time for making and delivering such return as he may deem necessary, not exceeding thirty days. The amount so added to the tax shall be collected at the same time and in the same manner as the tax originally assessed unless the refusal, neglect, or falsity is discovered after the date for payment of said taxes, in which case the amount so added shall be paid by the delinquent corporation, * * * immediately upon notice given by the collector. All assessments shall be made and the several corporations * * * shall be notified of the amount for which they are respectively liable on or before the first day of June of each successive year, and said assessments shall be paid on or before the thirtieth day of June, except in cases of refusal or neglect to make such return, and in cases of false or fraudulent returns, in which cases the Commissioner of Internal Revenue shall, upon the discovery thereof, at any time within three years after said return is due, make a return upon information obtained as above provided for, and the assessment made by the Commissioner of Internal Revenue thereon shall be paid by such corporation, * * * immediately upon notification of the amount of such assessment."

In assessing taxes under this statute, the following steps are to be taken:

(1) The corporation is to make a true and accurate return of its income not later than March 1st in each year. Paragraph 3.

(2) Upon such return a tax is to be assessed and the corporation notified of the amount thereof on or before June 1st in each year. And the tax is to be paid on or before June 30th. Paragraph 5.

(3) If the commissioner, upon evidence produced before him, is of the opinion that a corporation has made an incorrect return, or is informed by the collector that a corporation has failed to make a return, the commissioner is authorized to designate a revenue agent to examine the books of the corporation and to take testimony, and, upon obtaining the desired information, to amend the incorrect return, or make a return, as the case may be. Paragraph 4.

(4) If the return made was incorrect, that is, false or fraudulent, or no return was made through failure or neglect, then the commissioner upon discovery thereof at any time within three years from March 1st of the year when the return was due, having obtained the desired information as above provided, and amended the return, or made one, may assess the tax, which is to be paid by the corporation on June 30th, or immediately upon notification of the amount, depending upon whether the notification is prior or subsequent to June 30th, in the year in which the return was due. Paragraph 5.

(5) If the information obtained discloses that the return was made with false and fraudulent intent, the commissioner is to add a penalty of 100 per centum to the true tax; and in case the corporation has refused or neglected to make a return before March 1st, or within the time as extended by the collector, not exceeding 30 days (which he may do when the neglect is occasioned by sickness or absence of the officers of the corporation required to make the return or for other sufficient reason), then the commissioner, having made a return and assessed the true tax, is authorized to add a penalty of 50 per centum to the tax. The penalties so added are to be collected at the same time, and in the same manner, as the tax on returns regularly made, unless the refusal, neglect, or falsity is discovered after the date fixed for the payment of the tax on returns regularly made. But if the discovery of either of these facts is not made until after that date, then the commissioner is authorized upon the discovery of either of them within three years after March 1st in the year in which the return was due, and having assessed the true tax as above stated, to add the penalty of 50 or 100 per centum to the true tax, according as the facts warrant, and to collect the same upon notice to the corporation. Paragraph 5.

The case discloses that the plaintiff, having paid the taxes assessed on returns which it had made in the regular course for the years above stated, on February 27, 1913, at the request of the commissioner, filed supplemental returns for each of those years; and that on March 1, 1913, the commissioner made the additional assessments here complained of.

The plaintiff takes the position that the commissioner had no authority to make the additional assessments after the taxes had been assessed and paid on the original returns, as the original returns were not made with a false and fraudulent intent; that the statute confers authority upon the commissioner to amend returns and assess taxes thereon after taxes have been assessed and paid in the regular course, only where the error in the original returns was inserted with a false and fraudulent intent, and not where, as in this case, the error or misstatement in the returns was made in good faith and under an erroneous construction of the law.

The question therefore narrows itself down to this: Does the word "false," as used in the phrase "false or fraudulent," in that clause of paragraph 5 authorizing the commissioner to assess additional taxes upon an amended return at any time within three years after the original return was due, mean an error or misstatement due to an honest mistake, or is it confined and limited to errors or misstatements made with an intention to mislead and deceive?

A false return, in the absence of an intention to mislead, is not a fraudulent one. That Congress in the enactment of this law so understood the meaning of the word and used it is disclosed by the language employed in a previous clause of the same paragraph, where it authorizes the imposition of a penalty of 100 per centum of the true tax in case the error in the original return proceeded from a false and fraudulent intent. In that clause it is manifest that it was

intended the commissioner should not have the power to impose a penalty of 100 per centum unless the error in the original return was false and made with an intent to deceive and mislead. And the reasonable inference is that if Congress had intended that the power of the commissioner in the assessment of taxes upon amended returns, either before or after the taxes assessed on the original returns were due and payable, should exist only in case the error or misstatement was inserted in the original returns with an intention to mislead and deceive, it would have used terms as plain and unambiguous as it did in conferring the authority to impose a penalty of 100 per centum; and that, as it did not employ such language, it should be held not to have so intended.

My conclusion on this branch of the case is that the commissioner was authorized to make the additional assessments even though the errors in the original returns were due to an honest mistake and were not discovered until after the taxes assessed in the regular course had been paid.

[3, 4] The defendant also contends that the additional assessment for the year 1909 is invalid, for the alleged reason that it was not made within three years from March 1, 1910, when the return for the year 1909 was due. This contention is without foundation. The statute does not require the additional assessment to be made within the three-year period. The limitation is upon the discovery of the error by the commissioner within the three years and not upon the making of the additional assessment. But however this may be, the additional assessment in this instance was made within three years from March 1, 1910, for that date is to be excluded in computing the time fixed by the statute. The general rule for the interpretation of statutes where time is to be computed from a particular day, as when an act is to be performed within a specified period from or after a day named—is to exclude the day thus designated and to include the last day of the specified period. Sheets v. Selden, 2 Wall. 177, 17 L. Ed. 822; Trust Co. v. Green Cove Springs & M. R. Co., 139 U. S. 145, 11 Sup. Ct. 512, 35 L. Ed. 116; Hicks v. National Life Ins. Co., 60 Fed. 690, 9 C. C. A. 218.

The petition is dismissed, with costs, and a decree will be entered accordingly.