### ELIOT NAT. BANK v. GILL.

(Circuit Court of Appeals, First Circuit. December 21, 1914.)

#### No. 1058.

1. INTERNAL REVENUE (§ 9*)—CORPORATION TAXES—DEDUCTION—"TAXES IMPOSED."

Corporation Tax Law Aug. 5, 1909, c. 6, § 38, par. 2, 36 Stat. 112 (Comp. St. 1913, § 6301), imposes a tax on the net income of corporations, but authorizes deduction from the gross amount of income of all sums paid by the corporation within the year for taxes imposed under the authority of the United States or of any state. *Held*, that the term "taxes imposed" must be construed to mean taxes imposed on a corporation which it was compelled to pay out of its own assets, and did not include taxes imposed on the corporation's capital stock against the stockholders, though the corporation is required to pay the taxes in the first instance, being authorized to charge the amount so paid against the stock.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. § 9.*]

2. INTERNAL REVENUE (§ 25*) — CORPORATIONS — EXCISE TAX — RETURN — "FALSE"—COMMISSIONERS' POWER TO AMEND.

Corporation Tax Law Aug. 5, 1909, c. 6, § 38, par. 5, 36 Stat. 112 (Comp. St. 1913, § 6304), providing for the collection of a corporation excise tax, authorizes the Commissioner of Internal Revenue, in case a return is false or fraudulent, to amend the same at any time within three years, and assess and collect the correct amount of the tax. *Held*, that the word "false," as so used, did not include only returns fraudulently made, or with intent to defraud, but should be construed as including all erroneous or incorrect returns, and to authorize the correction of an incorrect return within the three-year period, though made under a mistake of law, and though the tax under the return had been paid.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 72, 73; Dec. Dig. § 25.*

For other definitions, see Words and Phrases, First and Second Series, False.]

In Error to the District Court of the United States for the District of Massachusetts; Geo. H. Bingham, Judge.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by the Eliot National Bank against James D. Gill, Internal Revenue Collector. Judgment for defendant, and plaintiff brings error. Affirmed.

See, also, 210 Fed. 933.

Edwin H. Abbot, Jr., of Boston, Mass., for plaintiff in error.

James S. Allen, Jr., of Boston, Mass. (Asa P. French, of Boston, Mass., on the brief), for defendant in error.

Before PUTNAM and DODGE, Circuit Judges, and ALDRICH, District Judge.

DODGE, District Judge. The facts in this case were agreed, and are fully stated in the opinion below (210 Fed. 933).

[1] The plaintiff bank, in making its returns of taxable net income required by the Corporation Tax Law, was entitled by the provisions of that act to deduct from its gross income "all sums paid by it within the year for taxes imposed under the authority * * * of any state." It deducted, in each of the three years here in question, the taxes assessed upon the shares of its capital stock under the authority of provisions of the Massachusetts statutes then in force, and thereafter paid by it to the city of Boston, as required by the provisions referred to. If it had the right under the Corporation Tax Law to make these deductions, it is now entitled to recover them from the defendant collector. The Commissioner of Internal Revenue disallowed them, and assessed them to the bank upon a return by him of their amount. The additional assessment thus made has been paid under protest.

The Massachusetts statutes provided, in substance, that all shares of stock in banks within the state should be assessed to the owner, whether resident or nonresident, in the municipality wherein the bank was located; that persons appearing from the books at a stated time to be owners should be deemed the owners of the shares; that every bank should pay the tax so assessed, or be liable for it, with 12 per cent. interest; that the shares should be subject to the tax paid by the bank; and that the bank should have a lien for such payment upon the shares and all the shareholders' rights and property in the corporate property. There were other provisions requiring the taxes thus collected from the bank to be credited by the state tax commissioner to the respective municipalities wherein the shareholders resided, and making any claims to exemption in respect thereof by a shareholder, if valid, recoverable from the municipality to which he belonged.

The Corporation Tax Law permits the deduction from gross income of certain payments of other kinds made within the year by the corporation. All these, however, as they are described in that statute, are payments by the corporation in diminution of its corporate income as such, being payments to discharge liabilities incurred solely on its own account, and not to discharge liabilities for which others would be ultimately responsible. But the payment which the laws of Massachusetts require a bank to make as above is of taxes plainly not assessed upon it or its property; and besides giving it a lien for the amount paid upon the shares in respect of which the taxes are assessed, the

provisions of the Massachusetts laws are such as result in making the respective shareholders liable to the bank for the amount of taxes paid in respect of their shares. We agree with the District Court that such payments made by the bank in compliance with the laws of Massachusetts would have been recoverable from the respective shareholders, because made for their benefit, upon the contract necessarily implied from the circumstances of the payments. The above lien and right of recovery distinguish such payments in their nature from the other payments which the Corporation Tax Law allows to be deducted in ascertaining taxable net income. They also, in connection with the provisions in the state laws for assessment to the shareholders, for credit to the municipalities whereof they are residents, and for settlement of any questions of exemption with the respective municipalities, make it impossible to say that the tax is one imposed upon the bank. Though payment of such taxes is a duty imposed upon the bank, it cannot be said that the taxes are imposed either upon it or its property. The taxes are imposed upon the shareholders and their property, and the payment is by the bank only as their representative.

We fully agree with the District Court that the Corporation Tax Law, in permitting the deduction of "taxes imposed" from the gross income of a corporation, must be understood to mean taxes imposed upon the corporation. We cannot so interpret the language as to make it include taxes imposed upon the shareholders as above, even though the corporation is required to make the payment on their behalf.

[2] It is contended on the bank's behalf that, even if the deductions made were not authorized by the Corporation Tax Law, the Commissioner was without power on March 1, 1913, to make, as he did, the additional assessments for the amount of those deductions which it has paid under protest and now seeks to recover back from the collector.

There is no claim that the deductions made by the bank in its returns for 1909, 1910, and 1911 were dishonestly made. That they were honest is undisputed, although, as we hold, they were incorrect. They were not fraudulent, though false in the sense of being incorrect; nor were they false in any other sense. They have not been so treated by the Commissioner, who, in making his additional assessments, did not add the penalties directed by the act in case of returns fraudulently false.

The Commissioner's discovery of the facts regarding these deductions was made within three years after March 1, 1910, the year wherein the first of the three returns, afterward found erroneous, namely, that for 1909, was due, and his assessment of the amount of the deductions was made March 1, 1913. In the case of "false or fraudulent" returns, the fifth subdivision of section 38 of the act gives the Commissioner power "upon the discovery thereof, at any time within three years after said return is due," to make an additional assessment. We agree with the District Court that this language does not prevent the making of the assessment after, if the discovery has been within, the three years, and that in any case March 1, 1913, was within the three years.

The question whether the Commissioner ever had power to make additional assessments in such a case as this depends upon the question whether "false or fraudulent," in that clause of the fifth subdivision which authorizes the assessment of additional taxes upon discovery within three years after the original return, is to be taken as meaning only such returns as are fraudulently false, or as including also such returns as are false only in the sense of being incorrect.

It is true that "false or fraudulent" is used but four times in all the Corporation Tax Law, and may be taken on each of the other three occasions to mean "false and fraudulent." The first instance is in the fifth subdivision of section 38, where the language is:

"And in case of any return made with false or fraudulent intent, he [the Commissioner] shall add one hundred per centum of such tax."

The next instance is later in the same subdivision, and occurs in the clause with which we are immediately concerned, providing that assessments are to be made and the several corporations notified on or before June 1st in each successive year, and payment made on or before June 30th "except in cases of refusal or neglect to make such return, and in cases of false or fraudulent returns," in which cases the Commissioner is to make the additional assessment upon discovery within three years.

The remaining two instances are both in the eighth subdivision, which provides a penalty if any corporation subject to the act shall refuse or neglect to make a timely return, "or shall make a false or fraudulent return," and also makes guilty of a punishable misdemeanor any person authorized to make, render, or sign any return, who makes "any false or fraudulent return, with intent to defeat or evade the assessment required," etc.

Where, as in the first of the above instances, "false or fraudulent" is used to describe an intent, it is clear that a false intent must necessarily be a fraudulent intent. Where, as in the last two instances, "false or fraudulent" occurs in provisions imposing a penalty or creating an offense, "false" must mean willfully and intentionally false, because of the presumption against a construction which would subject an honest mistake to a penalty, and still more against a construction which would punish such a mistake as a misdemeanor. But, within the clause whose meaning is to be determined, there is nothing which necessarily requires "false or fraudulent" to mean exactly what it means as used in the different connections above considered. The purpose of this clause is only to prescribe the Commissioner's powers and duties when he discovers a return which needs correction. If "false" by itself often means fraudulently false, it is also often used to mean no more than "incorrect," and the cases in which circumstances indicate the former meaning as the proper one cannot be said to have any decisive predominance over those wherein the other is plainly required.

In the fourth subdivision, and in so much of the fifth as precedes the words now in question, the Commissioner's duties are prescribed in the cases of "incorrect" returns, failure to make any returns, and returns made with "false or fraudulent intent." The provisions im-

mediately follow which fix the time for assessments upon returns generally. They are to be made on or before the 1st and paid on or before the 30th of the June following their date, except in the cases of refusal or neglect and in the cases of "false or fraudulent" returns. These may be corrected within three years. Unless returns merely "incorrect" are here included within the class here called "false or fraudulent," the Commissioner is left without any power to correct them after having once assessed upon them. The meaning here must be determined according to the intent of the act, so far as it can be gathered from all the provisions made regarding the same subject-matter. In view of all the provisions of the fourth and fifth subdivisions taken together, we find it more reasonable to believe "false" used in the clause under construction in a sense more inclusive than that which the context would permit in the other places where it appears in the act with "fraudulent," and in a sense broad enough to include returns honestly incorrect, than to regard the provisions as intended to leave the Commissioner wholly without power to make any corrections in the latter class of cases. We are unable to believe that the elaborate provisions of the fourth subdivision for investigation, and a new return with a new assessment, or an amended return, in all cases of error, whether false, fraudulent, or merely incorrect, can have been intended to lead to no efficient result in the case of a return merely "incorrect," like this, as would be the case if the position of the plaintiff in error were correct. If there could be no reassessment under the circumstances of this case within the prescribed period of three years, there could be none whatever, and the provisions above referred to would have to be regarded as wholly ineffective in such cases, unless availed of by the Commissioner before he had made the assessments he is required to make on or before June 1st. We agree with the District Court that, had this been the result intended, it would have been more unmistakably expressed.

The judgment of the District Court is therefore affirmed, and the defendant in error recovers his costs of appeal.