NATIONAL BANK OF COMMERCE IN ST. LOUIS v. ALLEN, Internal Revenue Collector.

(Circuit Court of Appeals, Eighth Circuit. March 25, 1915.)

No. 4260.

1. TAXATION ⚙⟶11—SHARES OF STOCK IN NATIONAL BANKS.

A national banking corporation and its property are separate and distinct from its shares of stock, and while a tax levied upon the bank itself by a state would be invalid, a tax levied by a state on its shares of stock is valid, and the state may lawfully require the tax to be paid in the first instance by the corporation, with the right to reimbursement from the stockholders.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 27–29; Dec. Dig. ⚙⟶11.]

2. INTERNAL REVENUE ⚙⟶9—EXCISE TAX ON CORPORATIONS—NET INCOME— "TAXES IMPOSED BY AUTHORITY OF THE STATE."

A tax levied by a state on the shares of a national bank, and paid by the bank as required by the state statute, but which under the statute it has the right to recover back from the stockholder, is not a "tax imposed under the authority of the state" on the corporation or its property, within the meaning of Corporation Tax Law Aug. 5, 1909, c. 6, § 38 (2), 36 Stat. 112 (Comp. St. 1913, § 6301), such as the bank is thereby authorized to deduct from its gross income to ascertain its taxable net income; nor can it be deducted as an expense of the business.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. ⚙⟶9.]

3. INTERNAL REVENUE ⚙⟶9—EXCISE TAX ON CORPORATIONS—CONSTRUCTION OF STATUTE—"EXCISE TAX."

The tax imposed by Corporation Tax Law, § 38 (Comp. St. 1913, § 6301), is not a tax upon income, but an "excise tax" upon the right to do business as a corporation, the amount of which is measured by income.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. ⚙⟶9.

For other definitions, see Words and Phrases, First and Second Series, Excise Tax.

Recovery of internal revenue taxes paid, see note to Merck v. Treat, 122 C. C. A. 305.]

4. INTERNAL REVENUE ⚙⟶9—EXCISE TAX ON CORPORATIONS—"FALSE" RETURN—POWER OF COMMISSIONER TO AMEND.

Corporation Tax Law, § 38, by subdivision 3 (Comp. St. 1913, § 6302), requires corporations to make "true and accurate" returns. Subdivision 4 (section 6303), authorizes the Commissioner of Internal Revenue to amend any return believed to be inaccurate without any limit as to time, and subdivision 5 (section 6304) provides that in case of "false or fraudulent" returns he shall, on discovery of the fact within three years, make a return and assessment thereon. *Held* that, construing such provisions together, the word "false," as used in subdivision 5, is not to be construed as meaning intentionally or fraudulently false, but the same as "not true," or the equivalent of "incorrect," and that the

Commissioner has power in such case to amend a return at any time within three years.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. ☞9.

For other definitions, see Words and Phrases, First and Second Series, False.]

In Error to the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Action at law by the National Bank of Commerce in St. Louis against E. B. Allen, United States Collector of Internal Revenue for the First District of Missouri. Judgment for defendant, and plaintiff brings error. Affirmed.

For opinion below, see 211 Fed. 743.

A. C. Stewart, of St. Louis, Mo. (Stewart, Bryan & Williams, of St. Louis, Mo., on the brief), for plaintiff in error.

Homer Hall, Asst. U. S. Atty., of St. Louis, Mo. (Arthur L. Oliver, U. S. Atty., of Caruthersville, Mo., on the brief), for defendant in error.

Before HOOK and CARLAND, Circuit Judges, and AMIDON, District Judge.

CARLAND, Circuit Judge. This is an action by the bank against the collector to recover the sum of $5,304.57 paid under protest as taxes assessed pursuant to section 38, Act of Congress approved August 5, 1909 (36 Stat. 112–117 [Comp. St. 1913, §§ 6301–6307]), for the years 1909, 1910, and 1911. Judgment was rendered by the court below against the bank on the pleadings. The following facts appear therefrom:

The bank is a national bank, organized under the laws of the United States and doing business at St. Louis, Mo. It made returns of its gross and net income to the United States Commissioner of Internal Revenue, hereafter called the Commissioner, for the years 1909, 1910, and 1911. From its gross income for 1909 it deducted $193,230.98; for the year 1910, $187,042.99; for the year 1911, $150,204.31—which sums it had paid in the years in which deduction was made for taxes imposed by the state of Missouri by virtue of chapter 117, article 2, Revised Statutes of Missouri 1909. The Commissioner assessed against the bank on its return of net income for the year 1909, $9,848.57; for the year 1910, $7,824.61; for the year 1911, $6,257.76—which the bank duly paid. In April, 1912, the Commissioner upon evidence produced before him decided that the returns of net income made by the bank for the years 1909, 1910, and 1911 were incorrect, in that the bank was not entitled to deduct the taxes imposed by the state of Missouri for those years by virtue of chapter 117, article 2, Revised Statutes of Missouri 1909. The Commissioner thereupon amended the returns of the bank for the years mentioned by adding to the reported net income the several amounts deducted by the bank as above stated and assessed against it on said additional net income a special tax for

the year 1909, of $1,932.10; for 1910, $1,870.43; for 1911, $1,502.04. These are the amounts which the bank paid under protest and now seeks to recover.

There is no claim that the returns as made by the bank were intended to defraud. It is conceded that they were made in good faith under the belief that the bank had a right to deduct from its gross income the taxes referred to. The Corporation Excise Tax Law, so far as the present controversy is concerned provides as follows:

"Sec. 38. That every corporation, joint stock company or association, organized for profit and having a capital stock represented by shares * * * shall be subject to pay annually a special excise tax with respect to the carrying on or doing business by such corporation, joint stock company or association, * * * equivalent to one per centum upon the entire net income over and above five thousand dollars received by it from all sources during such year. * * *

"Second. Such net income shall be ascertained by deducting from the gross amount of the income of such corporation, joint stock company or association, * * * received within the year from all sources, (first) all the ordinary and necessary expenses actually paid within the year out of income in the maintenance and operation of its business and properties, including all charges such as rentals or franchise payments, required to be made as a condition to the continued use or possession of property; * * * (fourth) all sums paid by it within the year for taxes imposed under the authority of the United States or of any state or territory thereof."

Section 11357 of article 2, chapter 117, Revised Statutes of Missouri 1909, is entitled:

"Sec. 11357. Assessment of manufacturing and business companies and *stock* in other corporations."

The section then provides that persons owning shares. of stock in banks incorporated under or by any law of the United States or of the state of Missouri shall not be required to deliver to the tax assessor a list thereof, but the president or other chief officer of such corporation shall under oath deliver to the assessor a list of all shares of stock held therein and the face value thereof, and such shares shall be valued and assessed as other property at their true value in money less the value of real estate, if any, represented by such shares of stock.

Section 11359, Revised Statutes of Missouri, provides that the taxes assessed on shares of stock listed as above, shall be paid by the corporation and the corporation may recover from the owners of such shares the amount so paid by it or deduct the same from the dividends accruing on such shares, and the amount so paid shall be a lien on such shares, respectively, and shall be paid before a transfer thereof can be made.

Section 11360 provides that, if the president or other chief officer of any such corporation fails to comply with the provisions of the law above mentioned, he shall forfeit to the state of Missouri the sum of $1,000 to be recovered by indictment in any court of competent jurisdiction.

Section 11463 provides for the seizure and sale of the shares in case the tax thereon is not paid. The legislation of the several states in regard to the taxation of shares in national banks is of like character, although it may differ in matter of detail. A general knowledge of the

power of the states to tax national banks is necessary in order to fully understand state legislation in relation thereto. The Supreme Court of the United States has uniformly held that the states cannot tax the property of national banks. As a result of this state of the law there was inserted in the National Bank Act of 1864 the following provisions:

"That the president and cashier of every such association shall cause to be kept at all times a full and correct list of the names and residences of all the shareholders in the association, and the number of shares held by each, in the office where its business is transacted; and such list shall be subject to the inspection of all the shareholders and creditors of the association, and the officers authorized to assess taxes under state authority, during business hours of each day," etc.  Act June 3, 1864, c. 106, § 40, 13 Stat. 111 (Comp. St. 1913, § 9773).

"Provided, that nothing in this act shall be construed to prevent all the shares in any of the said associations, held by any person or body corporate, from being included in the valuation of the personal property of such person or corporation in the assessment of taxes imposed by or under state authority at the place where such bank is located, and not elsewhere, but not at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state:  (2) Provided, further, that the tax so imposed under the laws of any state upon the shares of any of the associations authorized by this act shall not exceed the rate imposed upon the shares in any of the banks organized under authority of the state where such association is located:  (3) Provided, also, that nothing in this act shall exempt the real estate of associations from either state, county, or municipal taxes to the same extent, according to its value, as other real estate is taxed." Section 41, 13 Stat. 112.

[1] Under this legislation of Congress the states have provided for the taxation of shares in national banks and also provided for the payment of the same by the bank. It is, therefore, now the law that a national banking corporation and its property is separate and distinct from its shares of stock, and that while the tax levied upon a national bank itself by a state would be invalid, a tax levied by a state upon the shares of stock in a national bank is valid. Van Allen v. Assessors, 70 U. S. (3 Wall.) 573, 18 L. Ed. 229; Home Savings Bank v. Des Moines, 205 U. S. 503, 27 Sup. Ct. 571, 51 L. Ed. 901; Hawley v. Malden, 232 U. S. 1, 34 Sup. Ct. 201, 58 L. Ed. 477; Clement National Bank v. Vermont, 231 U. S. 120, 34 Sup. Ct. 31, 58 L. Ed. 147.

The Supreme Court of Missouri has uniformly nullified every attempt to assess taxes by the state directly against the property of national banks, and has repeatedly pointed out that the tax could be levied only upon the shares of stock. Lionberger v. Rowse, 43 Mo. 67, affirmed 9 Wall. 468, 19 L. Ed. 721; First National Bank v. Meredith, 44 Mo. 500; City of Springfield v. First National Bank, 87 Mo. 441; State ex rel. v. Bank, 160 Mo. 640, 61 S. W. 676; State ex rel. v. Shryack, 179 Mo. 424, 78 S. W. 808; State ex rel. v. Bank, 180 Mo. 717, 79 S. W. 943. In State ex rel. v. Brinkop, 238 Mo. 298, 143 S. W. 144, the Supreme Court of the state of Missouri said:

"Under our statute, stock in a bank, federal or state, is assessed against the shareholder, but the tax is paid in the first instance by the bank, and the bank is reimbursed by the shareholder. That is merely a mode of convenience in collecting the tax, the effect is the same as if the shareholder paid it in the first instance."

In Bank v. Commonwealth, 9 Wall. 353, 19 L. Ed. 701, it is said:

"It is strongly urged that it is to be deemed a tax on the capital of the bank, because the law requires the officers of the bank to pay this tax on the shares of its stockholders. Whether the state has a right to do this we will presently consider, but the fact that it has attempted to do it does not prove that the tax is anything else than a tax on these shares. It has been the practice of many of the states for a long time to require of its corporations thus to pay the tax levied on their shareholders. It is the common, if not the only, mode of doing this in all the New England states, and in several of them the portion of this tax which should properly go as the shareholders' contribution to local or municipal taxation is thus collected by the state of the bank and paid over to the local municipal authorities. In the case of shareholders not residing in the state, it is the only mode in which the state can reach their shares for taxation. * * * The mode under consideration is the one which Congress itself has adopted in collecting its tax on dividends, and on the income arising from bonds of corporations. It is the only mode which, certainly and without loss, secures the payment of the tax on all the shares, resident or nonresident; and, as we have already stated, it is the mode which experience has justified, * * * convenient and proper in regard to the numerous wealthy corporations of those states."

In the later case of Merchants' Bank v. Pennsylvania, 167 U. S. 461, 17 Sup. Ct. 829, 42 L. Ed. 236, it is said:

"It is further insisted that the act is really one taxing the bank, and not taxing the shares of stock as the property of the stockholders; but this is obviously a misinterpretation of the statute. That simply makes the bank the agent to collect from the stockholders the tax imposed upon the shares. * * * That the state has the right to make the bank its agent to collect the tax from the individual stockholders was settled in National Bank v. Commonwealth, 9 Wall. 353 [19 L. Ed. 701]."

In the still later case of Home Savings Bank v. Des Moines, 205 U. S. 503, 27 Sup. Ct. 571, 51 L. Ed. 901, it was again said:

"It, however, is not an uncommon and is an entirely legitimate method of collecting taxes to require a corporation, as the agent of its shareholders, to pay in the first instance the taxes upon shares, as the property of their owners, and look to the shareholders for reimbursement."

[2, 3] On this state of the record the important questions to be considered are as follows:

First. Were the taxes paid to the state by the bank on the shares of its capital stock such taxes as the Corporation Excise Tax Law authorized it to deduct from its gross income?

Second. Was the Commissioner of Internal Revenue authorized by law in April, 1912, to make the additional assessment on the amounts so deducted by the bank?

It must be conceded that the taxes were imposed by the state of Missouri. Were they imposed upon the owners of the shares, the bank being a mere agent to pay the tax, or were they imposed upon the bank as a legal entity? It seems to be conceded in the record that the bank has not been repaid these taxes. If this be so, it must be because the bank has not chosen to reimburse itself. In construing the Excise Tax Law as to the matter under consideration, it will help us to arrive at its true meaning by considering the real purpose of the law. The law is not a tax upon income, but a tax upon the right to do business as a corporation; the amount of the tax being measured according to the income. Therefore, for the purpose of ascertaining the amount of the

tax which the corporation shall pay, it is necessary to arrive at its own net income for any particular year. The bank, therefore, would have no right to deduct from its gross income taxes imposed by the state upon a third party, but which the bank itself had paid. Congress was legislating with reference to all corporations, and not particularly as to national banks.

We think the word "imposed" as used in the Excise Law must be given the meaning which the standard dictionaries give it. The Century Dictionary gives some of the meanings of the word as follows: "To lay as a burden, levy, inflict, or enforce; as by authority, power, or influence; as to impose taxes or penalties." Webster defines it to mean: "To lay as a charge, burden, tax, duty; to levy." Giving to the word the meaning which its association demands, and taking also into consideration the fact that the state of Missouri could not impose a tax upon the bank as such, we are of the opinion that the taxes paid by the bank were not imposed upon it by the state of Missouri within the meaning of the law, and that, therefore, the bank had no authority to deduct the same from its gross income.

It is also contended by the bank that, if it was not entitled to deduct the amounts which it did from its gross income as taxes imposed upon it by the state, it had the right to deduct them as expenses paid within the year out of income in the maintenance and operation of its business. This contention has much less to support it than the other. It was not paid out of income for any of the purposes mentioned in the law, and the taxes cannot be considered expense, for the reason that the law specifically provides for taxes, which would have been entirely unnecessary if the expenses were to cover taxes.

[4] We now come to inquire whether conceding that the taxes paid by the bank could not be deducted from its gross income, the Commissioner had authority in April, 1912, when he discovered that the returns of the bank made in 1910, 1911, and 1912, were incorrect, to make a new assessment upon the amounts deducted. The solution of this question is not entirely free from difficulty. Subdivision third of section 38 provides that corporations shall on or before March 1st of each year make *true* and accurate returns under oath. Subdivision fourth provides that:

"Whenever evidence shall be produced before the Commissioner of Internal Revenue which in the opinion of the Commissioner justifies the belief that the return made by any corporation * * * is incorrect, * * * the Commissioner of Internal Revenue may require from the corporation * * * such further information * * * as he may deem expedient, * * * and for the purpose of ascertaining the correctness of such return * * * is hereby authorized * * * to examine any books and papers bearing upon the matters required to be included in the return of such corporation, * * * and upon the information so acquired the Commissioner of Internal Revenue may amend any return or make a return where none has been made."

It will be observed that this subdivision does not limit the time within which the Commissioner of Internal Revenue must act.

Subdivision fifth provides:

"All returns shall be retained by the Commissioner of Internal Revenue, who shall make assessments thereon; and in case of any return made with

false or fraudulent intent, he shall add one hundred per centum of such tax. * * * All assessments shall be made and the several corporations, joint stock company, or association * * * shall be notified of the amount for which they are respectively liable on or before the first day of June of each successive year, and said assessments shall be paid on or before the 30th day of June, except in cases of refusal or neglect to make such return, and in cases of false or fraudulent returns, in which cases the Commissioner of Internal Revenue shall, upon the discovery thereof, at any time within three years after said return is due, make a return upon information obtained as above provided for, and the assessment made by the Commissioner of Internal Revenue thereon shall be paid by such corporation, joint stock company or association, * * * immediately upon notification of the amount of such assessment."

Counsel for the bank contends that the language last above quoted limits the Commissioner of Internal Revenue, as to his power to make a new assessment, to cases of refusal or neglect to make a return, and to cases where the return is false or fraudulent, and further contends that the word "false," in the connection in which it is used, must be construed to mean intentionally false, or false with intent to defraud, and as the returns of the bank in this case were not made with intent to defraud and were not false in a fraudulent sense, the Commissioner of Internal Revenue had no authority to act. We do not think that the contention can be sustained when we view all the provisions of the Corporation Excise Tax Law. It is true that the Commissioner did not add 100 per centum of the tax levied as provided for a false or fraudulent return, and we may conclude from this that the Commissioner was of the opinion that the returns were not false or fraudulent in the sense that those words were used in the language of the law which authorizes the addition of the penalty.

The words "false" or "fraudulent" as pointed out by the Circuit Court of Appeals of the First Circuit in Eliot National Bank v. Gill, 218 Fed. 600, 134 C. C. A. 358, is used but four times in the Corporation Tax Law. The first instance is in the fifth subdivision above quoted at the commencement thereof, where the law provides for the addition of 100 per centum of the tax. The next instance is in the same subdivision, and is the language which we are now considering; the remaining two instances are in the eighth subdivision, which provides a penalty for the refusal or neglect to make a timely return, and also provides that one who shall make a false or fraudulent return shall be guilty of a misdemeanor and punished as therein provided. If the contention of counsel for the bank is correct, then the provisions of subdivision fourth, which allows the Commissioner, in case he finds a return to be incorrect merely, without reference to whether it is false or fraudulent, would be inoperative unless the correction was made before the tax was due for any particular year. We do not think any such result should be reached or that it necessarily follows from an examination of the law. We agree with the Court of Appeals of the First Circuit, in the case above mentioned, that there is no necessity of construing the word "false" where it is used with reference to the time in which the Commissioner shall act to mean fraudulently false or dishonest, and that the full purpose of the law and the rights of all parties may be preserved by construing the word broadly enough to

include a return which was made in good faith but incorrect. The bank was required under the law to make a true return. The return that it did make was incorrect, or in other words it was not true, but false; that is, false in the sense that it was not true. We think the word should be given this particular signification in connection with the language now being construed, and giving it such meaning the Commissioner had full authority to make a new assessment on the property omitted from the returns made by the bank.

The point is made that the Excise Law as we construe it would violate the principle of uniformity, in that to refuse to allow a banking corporation, in computing its net income, to deduct taxes paid to the state, when such deduction is allowed to a corporation doing a manufacturing, insurance, or other kind of business, would result in gross inequality against the bank. The trouble with this contention is that it assumes that the taxes paid were imposed upon the bank, which we decide is not the case. The District Court of Massachusetts in the case of Eliot National Bank v. Gill (D. C.) 210 Fed. 933, the Circuit Court of Appeals for the First Circuit, in affirming the judgment in the same case, 218 Fed. 600, 134 C. C. A. 358, and also the District Court of the Eastern District of Pennsylvania in the case of Northern Trust Company v. McCoach (D. C.) 215 Fed. 991, have reached the same conclusions as herein expressed.

The judgment of the court below should be affirmed. And it is so ordered.