**DU PONT v. GRAHAM, Collector of Internal Revenue.**

(District Court, D. Delaware. June 13, 1922.)

No. 457.

Internal revenue ☞28—Taxpayer entitled to injunction to restrain distraint of property.

In view of the provision of Revenue Act 1921, § 250d, that no suit or proceeding for collection of income taxes shall be begun after the expira-tion of five years after the date when the return was filed, and of section 252, that taxes paid in excess of those properly due shall be credited back or refunded, but not when a claim therefor is not filed within five years after the date when the return was due, where an additional return and assessment, alleged to be unauthorized and illegal, are made by the commissioner after the expiration of such five years, and a collector is proceeding to collect the same by distraint, the taxpayer, being without remedy at law and to prevent irreparable injury through sale of his prop-erty, may maintain a suit in equity for an injunction to restrain such sale.

In Equity. Suit by Alfred I. Du Pont against Harry T. Graham, in-dividually and as Collector of Internal Revenue. On motion for pre-liminary injunction and defendant's motion to dismiss bill. Motion to dismiss denied, and injunction granted.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

William A. Glasgow, Jr., and Henry P. Brown, both of Philadelphia, Pa., and Robert Penington, of Wilmington, Del., for plaintiff.

James H. Hughes, Jr., U. S. Atty., of Wilmington, Del., and Chester A. Gwinn, of Washington, D. C., for defendant.

THOMPSON, District Judge. From the allegations of the bill and supporting affidavit, and the defendant's affidavit, the following facts appear:

On September 30, 1915, the plaintiff was the owner of 37,767 shares of the common stock of the E. I. Du Pont de Nemours Powder Company, incorporated in 1903 under the laws of New Jersey, hereinafter called the New Jersey Company. On October 1, 1915, the New Jersey Company transferred its assets as an entirety and as a going concern to E. I. Du Pont de Nemours & Co., incorporated under the laws of Delaware and hereinafter called the Delaware Company.

As part of the plan of reorganization, each stockholder of the New Jersey Company received two shares of the common stock of the Delaware Company for each share of common stock held by him in the New Jersey Company. The plaintiff received, on or about October 1, 1915, a total of 75,534 shares of the common stock of the Delaware Company, of the par value of $100 per share.

On February 19, 1916, the plaintiff filed his income tax return under the Act of October 3, 1913 (38 Stat. 114), and on March 4, 1916, filed an amended return of his income for 1915. The plaintiff did not, however, return nor pay tax upon the said stock dividend as part of his income. The plaintiff believes he attached to his return a statement in writing fully setting forth the entire transaction under which he received the stock, and protesting against its inclusion in his income for the year 1915, but the fact that he did attach such statement is neither averred nor proved. On January 1, 1920, the plaintiff received through the mails a notice and demand, dated December 31, 1919, that he pay to the defendant, as collector of internal revenue, on or before January 10, 1920, the sum of $1,576,015.86 for income tax for the year 1915.

It appears that on November 27, 1917, Income Tax Inspector Du Ross made a report to the revenue agent in charge at Baltimore, Md., in which he reported, among other things, that the plaintiff had received as income, during the year 1916, 200 per cent. in common stock dividends distributed by the E. I. Du Pont de Nemours Company, previously omitted. Du Ross made a further report on July 22, 1919, as a result of which, and of other investigations, the Commissioner of Internal Revenue made an amended return upon such information, as provided for by section 2E of the Act of October 3, 1913. The evidence clearly shows that this amended return was made not earlier than July 22, 1919, and that the assessment of the additional tax claimed was not made until December, 1919.

The plaintiff avers that the defendant intends to proceed to collect the additional taxes referred to in the notice and demand of December 31, 1919, by distress and sale of the plaintiff's lands and freehold in the district of Delaware; that the result would be an irreparable injury to the plaintiff, and deprive him of any remedy for contesting the validity of the assessment or the amount thereof; and he prays for an in-

junction restraining the defendant from distraining or attempting to distrain to collect the said sum of $1,576,015.86. It is claimed that under the provisions of section 2E of the Income Tax Act of 1913, no return could be made by the Commissioner after the expiration of three years from March 1, 1916, and no assessment made thereon after the expiration of three years from June 1, 1916. No return or assessment was made within the prescribed time.

Further objections are that the alleged return, not made until July, 1919, or thereafter, was not made by the officials authorized by the law, was not made according to the form prescribed, and that the assessment was not based upon the alleged return.

The stock dividend upon which it is attempted to hold the plaintiff liable has been held by the Supreme Court to be taxable income. U. S. v. Phellis (260, October Term, 1921) 257 U. S. 156, 42 Sup. Ct. 63, 66 L. Ed. ——. We have, therefore, a lawful tax upon income for the year 1915 for which the plaintiff should have made return for that year. But the plaintiff contends that the amended return made for him by the Commissioner and the assessment thereon were not made according to law, and therefore are invalid, and that no suit or proceeding may now be brought upon such invalid return and assessment.

Section 2E of the Income Tax Act of 1913 (38 Stat. at Large 169), after providing for assessment and notice before June 1 of each successive year, and that assessments shall be paid on or before June 30, provides that, in case of refusal or neglect to make such return, and cases of false or fraudulent returns, the Commissioner—

"shall upon the discovery thereof, at any time within three years after the return is due, make a return upon information obtained as provided for in this section or by existing law, and the assessment made by the Commissioner of Internal Revenue thereon shall be paid by such person or persons immediately upon notification of the amount of such assessment."

It is conceded that the plaintiff's return was incorrect, and was therefore "false," within the meaning of the section above cited. Woods v. Lewellyn, 252 Fed. 106, 164 C. C. A. 218; Eliot National Bank v. Gill, 218 Fed. 600, 134 C. C. A. 358; National Bank of Commerce v. Allen, 223 Fed. 472, 139 C. C. A. 20. The plaintiff, therefore, urges that, as the return prepared by the Commissioner was not made within three years after the plaintiff's return was due on March 1, 1916, and the assessment was not made within three years from June 1, 1916, no suit or proceeding may be begun by the collector for recovery of the tax based thereon. The question as to whether the three years within which a return may be made runs from the time of the discovery or from the time when the return is due has been held against the plaintiff in a dictum in Eliot National Bank v. Gill, 218 Fed. 600, 134 C. C. A. 358; but the point was not expressly before the court, either in that case or in Woods v. Lewellyn, 252 Fed. 106, 164 C. C. A. 218, where the inference is to the contrary. The subject is discussed in Montgomery's Tax Procedure (Ed. 1921) p. 170, footnote 18, and the opinion of the author is that the punctuation conveys a very clear meaning that the discovery and the assessment must be made within three years from the time when the return is due.

These considerations, however, all go to the question of the invalidity of the return and assessment, and cannot be raised in this proceeding, in view of the inhibition of section 3224, R. S. (Comp. St. § 5947), providing, "No suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court," and the rulings of the Supreme Court holding that Congress—

"has provided a complete system of corrective justice in regard to all taxes imposed by the general government, including provisions for recovering the tax after it has been paid, by suit against the collector, and therefore the taxpayer has no recourse to the courts until after the money is paid." State Railroad Tax Cases, 92 U. S. 575, 613, 23 L. Ed. 663.

Therefore it must be held that the remedy by injunction will not lie, unless, because the plaintiff, through the threatened action of the collector to collect through distraint, is deprived of any redress at law, the effect of section 3224 upon the facts of this case has been modified by subsequent legislation. By the Revenue Act of November 23, 1921, § 250(d), 42 Stat. p. 265, it is provided:

"No suit or proceeding for the collection of any such taxes due under this act or under prior income, excess profits, or war-profits tax acts, or of any taxes due under section 38 of such Act of August 5, 1909, shall be begun, after the expiration of five years after the date when such return was filed" etc.

As the plaintiff's return was filed in March, 1916, I see no escape from the conclusion that the above provision of the act of 1921 interposes a limitation upon suits or proceedings which expired in 1921. Moreover, section 1320 of the act of 1921 provides:

"That no suit or proceeding for the collection of any internal revenue tax shall be begun after the expiration of five years from the time such tax was due, except in the case of fraud with intent to evade tax, or willful attempt in any manner to defeat or evade tax. This section shall not apply to suits or proceedings for the collection of taxes under section 250 of this act nor to suits or proceedings begun at the time of the passage of this act."

The latter paragraph of the above section was apparently inserted because section 250 contains its own provisions for limitation of time of making assessments, extension with the consent of the taxpayer, and limitation of time for beginning suits or proceedings. Under the general system for collection of taxes it would no doubt be held that the plaintiff's remedy would be to pay the tax under protest and bring suit against the collector to recover it back. But the plaintiff argues that, if he should pay the tax to the collector, he would on several grounds be debarred from setting up, as a basis of recovery against the collector, either that the return made by the Commissioner or the assessment was invalid, or that the stock of the Delaware Company received by the plaintiff was assessed in excess of its fair value for the purpose of determining the tax. To sustain this contention, the plaintiff cites section 252 of the Revenue Act of 1918 (40 Stat. 1085 [Comp. St. Ann. Supp. 1919, § 6336⅛uu]), re-enacted as section 252 of the Revenue Act of 1921, as follows:

"If, upon examination of any return of income made pursuant to * * * the Act of October 3, 1913, * * * it appears that an amount of income, * * * tax has been paid in excess of that properly due, then, notwith-

standing the provisions of section 3228 of the Revised Statutes, the amount of the excess shall be credited against any income, * * * taxes, or installment thereof, then due from the taxpayer under any other return, and any balance of such excess shall be immediately refunded to the taxpayer: Provided, that no such credit or refund shall be allowed or made after five years from the date when the return was due, unless before the expiration of such five years a claim therefor is filed by the taxpayer."

As the five years from the date when the return was due, namely, March, 1916, has long since expired, the plain meaning of the above section is that no credit or refund could now be lawfully allowed or made, because no claim therefor was filed by the plaintiff within the five years. It is evident that Congress intended by the provisions of section 250 (d) of the act of 1921 to provide a definite five-year limitation for the beginning of suits or proceedings for the collection of the taxes enumerated. If the revenue officers should unduly delay the assessment of taxes and the commencement of proceedings for collection, Congress has determined that five years after the due day of the return is a reasonable time to bring to an end the right to collect.

On the other hand, Congress has placed a limitation upon the taxpayer by the provisions of section 252 of the act of 1921 as to claims for taxes paid in excess of those lawfully due. If the plaintiff pays the amount demanded, no remedy at law is left open to him for the recovery of such excess. If a suit were begun against the taxpayer after the running of the statute of limitations, he could assert as a defense the various grounds urged in support of the present bill. But, if the collector should proceed to seize and sell the plaintiff's property, he would be deprived of any remedy excepting a suit at law against the collector. Meanwhile his freehold and property would have been subject to seizure and sale and his remedy at law would not adequately repair such injury. As was said in Ogden City v. Armstrong, 168 U. S. 224, 18 Sup. Ct. 98, 42 L. Ed. 444:

"In Union Pacific Railway v. Cheyenne, 113 U. S. 516, 525, this court, through Mr. Justice Bradley, said: 'But it is contended that the complainant should have sought a remedy at law and not in equity. · It cannot be denied that bills in equity to restrain the collection of taxes illegally imposed have frequently been sustained. But it is well settled that there ought to be some equitable ground for relief besides the mere illegality of the tax; for it must be presumed that the law furnishes a remedy for illegal taxation. It often happens, however, that the case is such that the person illegally taxed would suffer irremediable damage, or be subjected to vexatious litigation, if he were compelled to resort to his legal remedy alone. For example, if the legal remedy consisted only of an action to recover back the money after it had been collected by distress and sale of the taxpayer's lands, the loss of his freehold by means of a tax sale would be a mischief hard to be remedied. Even the cloud cast upon his title by a tax under which a sale could be made would be a grievance which would entitle him to go into a court of equity for relief.' "

The language of Mr. Justice Bradley applies aptly to the situation in the instant case. While section 3224 has been strictly construed in view of the remedial system providing for remedies of the taxpayer against the imposition of illegal taxes, following Mr. Justice Blatchford's comprehensive discussion of the subject in Snyder v. Marks, 109 U. S. 189, 3 Sup. Ct. 157, 27 L. Ed. 901, Congress has since added to the system the limitation contained in the act of 1921, and, reading these

new provisions in connection with section 3224, I cannot conceive that Congress intended the taxpayer to be rigidly held to the inhibitions of section 3224 if the effect should be to nullify the inhibitions against the officers of the revenue contained in the later statutes, and thus to subject the taxpayer to proceedings by distraint without leaving him an adequate remedy at law, after the limitation had run against the collector's right to begin such proceeding. It would be contrary to equity to hold that, where no remedy is available at law, equity will fail to afford relief.

The views herein expressed are deemed sufficient to support a preliminary injunction, without going into a discussion of other contentions raised by the bill. The motion to dismiss is denied. A preliminary injunction may issue, restraining the defendant from proceeding by distraint or attempting to collect by distraint the taxes claimed, without, however, including therein restraint against collection by suit. An appropriate decree may be prepared by counsel.