# HOME SAVINGS BANK v. CITY OF DES MOINES.

## PEOPLE'S SAVINGS BANK v. SAME.

## DES MOINES SAVINGS BANK v. SAME.

### ERROR TO THE SUPREME COURT OF THE STATE OF IOWA.

Nos. 82, 83, 92.   Argued November 2, 5, 1906.—Restored to the docket for reargument December 3, 1906.—Reargued March 5, 1907.—Decided April 22, 1907.

The Constitution has conferred upon the Government power to borrow money on the credit of the United States and that power cannot be

burdened, impeded, or in any way affected, by the action of any State. *Weston* v. *Charleston*, 2 Pet. 449.

The tax upon the property of a bank in which United States securities are included is beyond the power of the State, and is also within the prohibition of § 3701, Rev. Stat., and other acts of Congress.

While the tax on an individual in respect to his shares in a corporation is not a tax on the corporation, and the value of the shares may be assessed without regard to the fact that the assets of the corporation include government securities, if the tax is actually on the corporation although nominally on the shares such securities may not be included in assessing the value of the shares for taxation.

If a State has not the power to levy a tax it will not be sustained merely because another tax which it might lawfully impose would have the same ultimate incidence.

The substantial effect of section 1332 of the Code of Iowa providing that shares of stock of state and savings banks and loan and trust companies shall be assessed to such banks and companies and not to the individual stockholders, and that in fixing the value of the shares capital, surplus and undivided earnings shall be taken into account, as the law has been construed by the highest court of the State, is to tax the property of the bank and not the shares of stock, and an assessment which includes government bonds owned by the bank in fixing the valuation of its shares is illegal and beyond the power of the State.

THE facts are stated in the opinion.

*Mr. N. T. Guernsey, Mr. William J. Harvison* and *Mr. George F. Henry,* with whom *Mr. Horatio F. Dale* was on the brief, for plaintiffs in error:

In so far as § 1322 of the Iowa code authorizes the taxation of United States bonds, it is void because in contravention of the Constitution and statutes of the United States. Rev. Stat. § 3701; *Weston* v. *Charleston,* 2 Pet. 448; *Bank* v. *New York,* 2 Bl. 620; *Bank Tax Cases,* 2 Wall. 200; Act of June 13, 1898.

The section provides that shares of stock of state and savings banks shall be assessed to such banks and not to the individual stockholders. It distinguishes between shares of stock in national banks and in savings banks, the former being assessed to the shareholders, the bank being merely the collecting agent and the shareholders being permitted to deduct

their debts, while the latter are assessed to the bank, which is required to pay the tax, without any right to reimbursement from the shareholder, the shareholder having no right to deduct debts. *Bank* v. *Rerick,* 96 Iowa, 238, 242; Code, § 1325.

Section 1322 of the Code of Iowa in fact imposes a tax upon the capital of the plaintiff in error, and therefore its government bonds should have been deducted.

The construction of this section by the Supreme Court of Iowa must be accepted. *Railroad Co.* v. *Kentucky,* 183 U. S. 503, 507.

The tax imposed by this statute, as it is construed by the Supreme Court of Iowa, is nothing more than a tax on capital, void in so far as the capital is invested in government bonds. Code, § 1321.

The tax is against the owner of the bonds, upon an assessment which includes the value of the bonds, without provision for reimbursement by the shareholder. It therefore does not come within the rule of *Van Allen* v. *Assessors,* 3 Wall. 573, because the tax is neither assessed against nor paid by the owner of the bonds.

The court will look to the substance and effect of the statute. *Home Ins. Co.* v. *New York,* 134 U. S. 594, 598.

Applying this test, the statute is a tax on the capital of the corporation, *New Orleans* v. *Houston,* 119 U. S. 278; *St. Johns National Bank* v. *Bingham Township,* 113 Michigan, 203, and this is held in the *German-American Savings Bank case.*

The doctrine of equivalency invoked by the Supreme Court of Iowa makes the tax in fact a tax on the bonds. *Owensboro Nat'l Bank* v. *Owensboro,* 173 U. S. 664.

A tax on the value of the capital is a tax on the property in which the capital is invested. *Railroad Co.* v. *Pennsylvania,* 198 U. S. 341, 353; *Stapylton* v. *Thaggard,* 91 Fed. Rep. 93; *National Bank of Virginia* v. *Richmond,* 42 Fed. Rep. 877; *Brown* v. *French,* 80 Fed. Rep. 166.

To the same effect in principle are the cases holding that the shares of a national bank cannot be taxed to it *in solido.*

*First National Bank* v. *Fisher,* 45 Kansas, 726; *National Bank of Chemung* v. *Elmira,* 53 N. Y. 49; *Sumpter County* v. *National Bank of Gainesville,* 62 Alabama, 464; *City of Springfield* v. *First National Bank,* 87 Missouri, 441; *First National Bank* v. *Meredith,* 44 Missouri, 500; *National Com. Bank* v. *Mobile,* 62 Alabama, 284. See also *National Bank* v. *Hoffman,* 93 Iowa, 119; *People ex rel.* v. *Coleman,* 126 N. Y. 433.

The statute cannot be sustained upon the theory that it makes the bank a mere collecting agent for the State.

In such cases the tax is not upon the property of the bank, and provision is always made for its reimbursement. *Stapylton* v. *Thaggard,* 91 Fed. Rep. 93; *Bank* v. *Commonwealth,* 9 Wall. 353, 362; *Hershire* v. *First Nat'l Bank,* 35 Iowa, 272, 277.

There is no conflict between these cases and *Cleveland Trust Co.* v. *Lander,* 184 U. S. 111.

There the law provided for taxing the shares to the shareholder and for reimbursement by him.

If § 1322 requires the taxation of the shares of the shareholders to the bank, it is void because within the inhibition of the Fourteenth Amendment. A tax exacted without jurisdiction is the taking of property without due process of law. *Railroad Co.* v. *Pennsylvania,* 198 U. S. 341; *Corry* v. *Baltimore,* 196 U. S. 466.

If what this statute requires is a tax upon the property of the shareholders assessed against and to be paid by the bank, without provision for its reimbursement, the bank is deprived of its property without due process of law, and the law itself is void. *State Tax on Foreign-held Bonds,* 15 Wall. 300, 319; Cooley on Taxation (3d ed.), 1, 3, 12 and 27; *County of Santa Clara* v. *Southern Pac. R. Co.,* 18 Fed. Rep. 385, 392; *United States* v. *Railroad Company,* 17 Wall. 322; *Henkle* v. *Town of Keota,* 68 Iowa, 334.

*Mr. William H. Bremner,* with whom *Mr. M. H. Cohen* was on the brief, for defendants in error:

The assessment is not void merely because it was assessed

in the wrong name.    *Weston & Co.* v. *Cass Co.*, 69 Iowa, 147; *First National Bank* v. *Concord*, 59 N. H. 75.

The decision of the Supreme Court of Iowa as to the form of the assessment and failure to comply with the state statute in relation to the method of procedure is binding on the Supreme Court of the United States.    *Stanley* v. *Supervisors of Albany*, 121 U. S. 535; *Palmer* v. *McMahon*, 133 U. S. 662.

Questions not raised in the lower court will not be considered on appeal.    *Sunley* v. *Metropolitan Life Ins. Co.* 105 N. W. Rep. 408 (Iowa); *McCormick Harvester Co.* v. *McCormick*, 103 N. W. Rep. 204 (Iowa); *Stelpflug* v. *Wolfe*, 102 N. W. Rep. 1130 (Iowa); *Hamilton Mfg. Co.* v. *Massachusetts*, 6 Wall. 632.

Section 1322 is not void as in contravention of the Constitution and statutes of the United States.

The construction and meaning given to a statute of a State by the Supreme Court of such State is binding on the Supreme Court of the United States.    *Cleveland Trust Co.* v. *Lander*, 184 U. S. 111; *L. & N. R. R.* v. *Kentucky*, 183 U. S. 503–507.

For construction of § 1322 of the Code of Iowa, as determined by the Supreme Court of Iowa, see *German Am. Sav. Bank* v. *Burlington*, 118 Iowa, 84; *National State Bank* v. *Burlington*, 119 Iowa, 696; *First National Bank* v. *Independence*, 123 Iowa, 482.

The State has the power to assess for taxation corporate shares of stock without deducting, in determining their value, the value of United States government bonds held by the corporation.    *Van Allen* v. *Assessors*, 3 Wall. 584; *First National Bank* v. *Farwell*, 10 Biss. 270; *People* v. *Commissioners*, 4 Wall. 244; *National Bank* v. *Miller*, 19 Fed. Rep. 378; *National Bank* v. *Commonwealth*, 9 Wall. 353; *Cleveland Trust Co.* v. *Lander*, 184 U. S. 111.

A tax on the shares of stock of a bank is not a tax on its capital stock.    *Van Allen* v. *Assessors*, 3 Wall. 573; *Palmer* v. *McMahon*, 135 U. S. 662; *Cleveland Trust Co.* v. *Lander*, 184 U. S. 111; *German Am. Savings Bank* v. *Burlington*, 118 Iowa, 84; *First National Bank* v. *Independence*, 123 Iowa, 482.

A bank may be required to pay the taxes on the shares of stock of its stockholders. *Primghar State Bank* v. *Rerick,* 96 Iowa, 238; *German Am. Savings Bank* v. *Burlington, supra; National Bank* v. *Commonwealth,* 9 Wall. 353; *First National Bank* v. *Douglas Co.,* 3 Dill. 330; *Lionberger* v. *Rouse,* 9 Wall. 470.

The statute is not void because it does not provide for personal notice to the shareholders. *National Bank* v. *Dodge, Assessor,* 119 Fed. Rep. 57; *Palmer* v. *McMahon,* 133 U. S. 662; *Merchants' and Mfg. Natl. Bank* v. *Commonwealth,* 167 U. S. 461; *St. Clara Co.* v. *Southern Pac. R. Co.,* 8 C. C. A. 401.

MR. JUSTICE MOODY delivered the opinion of the court.

These cases raise the same Federal question. The plaintiffs in error were banking institutions incorporated under the laws of the State of Iowa. Upon each of them a tax was levied under a law of that State, which provided that "*Shares of stock of state and savings banks* and loan and trust companies *shall be assessed to such banks* and loan and trust companies and *not to individual stockholders.*" The material sections of the code are printed in the margin.[1]

---

[1] SEC. 1322. Shares of stock of national banks shall be assessed to the individual stockholders at the place where the bank is located. *Shares of stock of state and savings banks* and loan and trust companies *shall be assessed to such banks* and loan and trust companies *and not to the individual stockholders.* At the time the assessment is made, the officers of *national banks* shall furnish the assessor with a list of all the stockholders and the number of shares owned by each, and he shall list to each stockholder under the head of corporation stock the total value of such shares. To aid the assessor in fixing the value of such shares, the corporations shall furnish him a verified statement of all the matters provided in the preceding section, which shall also show, separately, the amount of capital stock, and the surplus and undivided earnings, and the assessor, from such statement and other information he can obtain, including any statement furnished to and information obtained by the Auditor of State, which shall be furnished him on request, shall fix the value of such stock, taking into account the capital, surplus and undivided earnings. In arriving at the total value of the shares

Each bank owned at the time to which the assessment related United States bonds, the value of which they insisted should be deducted from the valuation of the property assessed to them.   The taxing authorities refused to make that deduction, and their action was sustained by the Supreme Court of the State, whose judgments have been brought here by writs of error for review. .

These banks were corporations created by the State of Iowa. In imposing burdens upon them, their property, or their shares, the State does not, as in the case of national banks, require any authority from the United States.   Its own governmental power is sufficient for the imposition of such taxes, assessed by such methods, and under such standards of valuation as it may choose, unless something is done which violates some provision of the Federal Constitution, or of a Federal law which by that Constitution is made supreme. The only claim of violation of Federal right which need be considered here is that bonds of the United States have been taxed.   It is conceded and cannot be disputed that these securities are beyond the taxing power of the State, and the only question, therefore, is whether in point of fact the State

of stock of such corporations, the amount of their capital actually invested in real estate, owned by them, shall be deducted from the real value of such shares, and such real estate shall be assessed as other real estate, and the property of such corporations shall not be otherwise assessed.

SEC. 1325. The corporations described in the preceding sections shall be liable for the payment of *the taxes assessed to the stockholders of such corporations*, and such tax shall be payable by the corporation in the same manner and under the same penalties as in case of taxes due from an individual taxpayer, and may be collected in the same manner as other taxes, or by action in the name of the county.   Such corporations may recover from each stockholder his proportion of the taxes so paid, and shall have a lien on his stock and unpaid dividends therefor.   If the unpaid dividends are not sufficient to pay such tax, the corporation may enforce such lien on the stock by public sale of the same, to be made by the sheriff at the principal office of such corporation in this State, after giving the stockholders thirty days' notice of the amount of such tax and the time and place of sale, such notices to be by registered letter addressed to the stockholder at his post office address, as the same appears upon the books of the company, or is known by its secretary. . .

has taxed them. The first step useful in the solution of this question is to ascertain with precision the nature of the tax in controversy, and upon what property it was levied, and that step must be taken by an examination of the taxing law as interpreted by the Supreme Court of the State. A superficial reading of the law would lead to the conclusion that the tax authorized by it is a tax upon the shares of stock. The assessment is expressed to be upon "shares of stock of state and savings banks and loan and trust companies." But the true interpretation of the law cannot rest upon a single phrase in it. All its parts must be considered in the manner pursued by this court in *New Orleans* v. *Houston,* 119 U. S. 265, 278, and *Home Insurance Co.* v. *New York,* 134 U. S. 594, with the view of determining the end accomplished by the taxation, and its actual and substantial purpose and effect. We must inquire whether the law really imposes a tax upon the shares of stock as the property of their owners, or merely adopts the value of those shares as the measure of valuation of the property of the corporation, and by that standard taxes that property itself. The result of this inquiry is of vital importance, because there may be a tax upon the shares of a corporation, which are property distinct from that owned by the corporation and with a different owner, without an allowance of the exemption due to the property of the corporation itself, while, if the tax is upon the corporation's property, all exemptions due it must be allowed. Looking then further into the law, it appears that the shares are to be "assessed to such banks . . . and not to the individual stockholders." When this is read the doubt instantly arises whether the law intended to tax the corporation for property which it does not own, but which on the contrary is owned by the stockholders. Certainly such a purpose, against common justice and of doubtful constitutionality, ought not to be attributed to the law if any other fair construction is possible. With respect to taxation usually, if not necessarily, property and its owners are inseparable. Taxes are assessed against persons upon

the property which they own, not upon property which others own. We should be reluctant to suppose that there has been any departure from this principle in this law. It, however, is not an uncommon and is an entirely legitimate method of collecting taxes to require a corporation, as the agent of its shareholders, to pay in the first instance the taxes upon shares, as the property of their owners, and look to the shareholders for reimbursement. In this very law we have an example of this method. By § 1322, national bank shares are assessed to the stockholders, and by § 1325, the corporations are made liable to pay the tax and are secured by a lien on the stock and dividends, which may be enforced by sale. The state banking corporations are excluded *ex industria* from this statutory right of reimbursement by confining it to the cases of "taxes assessed to the stockholders of such corporation." This cannot include the case of state bank shares which are not so assessed. Nor can the corporations in the case at bar have by any possibility a common law right to recover the tax paid from the shareholders. The law imposes no obligation on the shareholder. In paying the tax the corporation has paid its own debt, and not that of others, and there is nothing in such a payment from which the law can imply a promise of reimbursement. These taxes, therefore, are not to be paid by the banks as agents of their stockholders, but as their own debt, and unless it is supposed that the law requires them to pay taxes upon property which they do not own, the taxes must be regarded as taxes upon the property of the banks. The fair interpretation of the law is that the taxes are upon the property of the banks. In the valuation for taxation the assessor is required to "take into account the capital, surplus and undivided earnings," must be furnished with "a verified statement of all matters provided by the preceding section," which by reference is seen to be a detailed statement showing the assets of the bank (§ 1321).[1] It is true that the assessor

[1] SEC. 1321. Private bankers. Private banks or bankers, or any persons other than corporations hereinafter specified, a part of whose business is the

may resort to "other information he can obtain," but, although capital, surplus and undivided earnings are expressly named, nothing is said of the franchise and good will, essential factors of the value of the shares, though not of the value of the assets of the bank. See *People* v. *Coleman*, 126 N. Y. 433. Moreover, the section closes with the words, "and the property of such corporation shall not be otherwise assessed," which plainly implies that the assessment already provided for is in substance an assessment upon the property of the corporation. That the law was administered upon the theory that the tax was upon the property of the corporation is signally illustrated by the proceedings in these cases. The valuation was first made on the exact figures of the capital, surplus, and undivided earnings, deducting the holdings of United States securities. Then, upon being advised that the deduction was erroneous, the assessor corrected the val-

---

receiving of deposits subject to check, on certificate, receipts or otherwise, or the selling of exchange, shall prepare and furnish to the assessor a sworn statement showing the assets, aside from real estate, and liabilities of such bank or banker on January 1st of the current year, as follows:

1. The amount of moneys, specifying separately the amount of moneys on hand or in transit, the funds in the hands of other banks, bankers, brokers or other persons or corporations, and the amount of checks or other cash items not included in either of the preceding items;

2. The actual value of credits, consisting of bills receivable owned by them and other credits due or to become due;

3. The amount of all deposits made with them by others, and also the amount of bills payable;

4. The actual value of bonds and stocks of every kind and shares of capital stock or joint stock of other corporations or companies held as an investment, or in any way representing the assets, and the specific kinds and descriptions thereof exempt from taxation;

5. All other property pertaining to said business, including real estate, which shall be specially listed and valued by the usual description thereof;

The aggregate actual value of moneys and credits, after deducting therefrom the amount of deposits and of debts owing by such banks, as provided in this chapter, and the aggregate actual value of bonds and stocks after deducting the portion thereof, exempt or otherwise, taxed in this State, and also the other property pertaining to the business shall be assessed at twenty-five per cent of the actual value of the same, not including real estate, which shall be listed and assessed as other real estate.

uation by adding the value of the securities deducted. We therefore conclude that the substantial effect of the law is to require taxation upon the property, not including the franchise, of the banks, and that the value of the shares, ascertained in a manner appropriate to determine the value of the assets, is only the standard or measure by which the taxable valuation of that property is determined. This we think is consistent with the interpretation of the law by the Supreme Court of Iowa, which sustained the taxation upon grounds which will be presently considered.

The next question is whether such taxation violates any provision of the Federal Constitution or of any paramount Federal law. The State cannot by any form of taxation impose any burden upon any part of the national public debt. The Constitution has conferred upon the Government power to borrow money on the credit of the United States, and that power cannot be burdened or impeded or in any way affected by the action of any State. This principle was announced in *Weston* v. *Charleston*, 2 Pet. 449, where it was held that taxes upon the stock of the United States levied by one of the municipal corporations of South Carolina were invalid. From that time no one has questioned the immunity of national securities from state taxation. It may well be doubted whether Congress has the power to confer upon the States the right to tax obligations of the United States. However this may be, Congress has never yet attempted to confer such a right. Until the time of the Civil War it was not thought to be necessary to express the constitutional prohibition in an act of Congress. But on the occasion of authorizing the issue of Treasury notes it was enacted that "all stocks, bonds, and other securities of the United States held by individuals, corporations, or associations within the United States shall be exempt from taxation by or under state authority." Act of February 25, 1862, 12 Stat. at Large, 346. The substance of this enactment is embodied in § 3701 of the Revised Statutes, and has usually, if not

invariably, since 1862 been inserted in acts authorizing the issue of bonds.

That the tax upon the property of a bank in which United States securities are included is beyond the power of the State, and, what perhaps is of lesser moment, within the prohibition of the statutory law, hardly needs to be proved by authority. But the authority is clear and conclusive. With the beginning of the Civil War large amounts of the national securities began to be issued. So important it was to sustain the national credit that, as we have seen, Congress for the first time began the practice of accompanying the authority for their sale with an express prohibition of their taxation by the States. The state banks often invested a large part or the whole of their resources in these securities, and the question of their liability to state taxation on their capital and surplus thus invested at once arose. The Bank of Commerce, incorporated under the laws of New York, invested all its capital, except its investment in real estate, in United States bonds. Under the authority of a law requiring that the capital stock should be assessed at its actual value a tax was levied. The Court of Appeals of New York sustained the tax so far as it applied to securities issued before the act of 1862, expressly declaring their exemption, and annulled it so far as it applied to securities thereafter issued. The case came here on a writ of error. *Bank of Commerce* v. *New York City*, 2 Black, 620. This court held the tax invalid on all securities, without even alluding to the act of 1862, but basing the decision entirely upon the constitutional inability of a State to affect by taxation the exercise of the sovereign power of the Nation in borrowing money on its credit. This was the rule specifically declared in *Weston* v. *Charleston*, as an application of the general rule of the immunity from state control of the operations of the Federal Government in the region of its supremacy. To the argument, which was strenuously urged, that the tax was not upon the securities but upon the capital of the bank, and that thereby the case was

distinguished from *Weston* v. *Charleston,* the court, by Mr. Justice Nelson, replied: "We cannot yield our assent to the soundness of the distinction."

The State of New York then amended its law, and enacted that banks should be "liable to taxation on a valuation equal to the amount of capital stock paid in, or secured to be paid in, and their surplus earnings." The validity of taxation under the amended law was considered in the *Bank Tax Case,* 2 Wall. 200. There it was insisted that the tax was imposed upon the corporation and not its property, and that the statute only prescribed a measure of the amount annually to be paid for the franchises. But the court held that the amendment simply changed the method of fixing the amount of capital, and that the tax was upon the capital, which, so far as invested in national securities, was beyond the power of the State.

The case at bar cannot be distinguished in principle from these cases. In the first case the tax was on the capital stock at its actual value; in the second case on the amount of the capital stock and the surplus earnings, and in the case at bar on the shares of the stock, taking into account the capital, surplus and undivided earnings. It would be difficult for the most ingenious mind and the most accomplished pen to state any distinction between these three laws, except in the manner by which they all sought the same end—the taxation of the property of the bank. The slight conceal-ment afforded by the omission of the property *eo nomine* is not sufficient to disguise the fact that in effect it is the property which is taxed. If included in that property it is discovered that there is some which is entitled by Federal right to an immunity, it is the duty of this court to see that the immunity is respected.

It is, however, contended that although these cases have not been overruled, distinctions have been drawn in later cases which are applicable here, and withdraw the cases before the court from their authority. These later cases must there-fore be considered and their exact effect determined. We

may quickly put out of view those not relied upon here, in which it has been held that the State may levy a tax upon the value of the franchise of corporations created by it, or upon the right of succession to property on the death of its owner, without first deducting the amount of United States securities owned by the corporation whose franchise is taxed, or by the estate transmitted under the inheritance laws of the State. *Society for Savings* v. *Coite,* 6 Wall. 594; *Provident Institution* v. *Massachusetts,* 6 Wall. 611; *Hamilton Company* v. *Massachusetts,* 6 Wall. 632; *Home Insurance Company* v. *New York,* 134 U. S. 594; *Plummer* v. *Coler,* 178 U. S. 115. The theory of all these cases is that the taxes are not imposed upon the assets of the corporation or the property of the decedent, but in the one case upon the franchise granted by the State and in the other case upon the right of succession to property on the death of the owner which is conferred by the State.

But another line of cases cannot so easily be dismissed. They were relied upon by the Supreme Court of Iowa, and the respect due to the opinion of that court demands that the reasons why we think those cases do not apply to the case at bar should be fully stated. These cases relate to the right of the State to tax at their full value shares of stock as the property of the shareholders. Although the States may not in any form levy a tax upon United States securities, they may tax, as the property of their owners, the shares of banks and other corporations whose assets consist in whole or in part of such securities, and in valuing the shares for the purposes of taxation it is not necessary to deduct the value of the national securities held by the corporation whose shares are taxed. The right to tax the shares of national banks arises by Congressional authority, but the right to tax shares of state banks exists independently of any such authority, for the State requires no leave to tax the holdings in its own corporations. The right of such taxation rests upon the theory that shares in corporations are property entirely distinct and independent from the property of the corporation.

The tax on an individual in respect to his shares in a corporation is not regarded as a tax upon the corporation itself. This distinction, now settled beyond dispute, was mentioned in *McCulloch* v. *Maryland,* 4 Wheat. 316, where, in the opinion of Chief Justice Marshall, declaring a tax upon the circulation of a branch bank of the United States beyond the power of the State of Maryland, it was said that the opinion did not extend "to a tax imposed on the interest which the citizens of Maryland may hold in this institution, in common with other properties of the same description throughout the State." The distinction appears, however, to have been first made the basis of a decision in *Van Allen* v. *The Assessors,* 3 Wall. 573. The National Bank Act, as amended in 1864, Rev. Stat. § 5219, permitted the States to include in the valuation of personal property for taxation, the shares of national banks "held by any person or body corporate" under certain conditions not necessary here to be stated. Acting under the authority of this law, the State of New York assessed the shares of Van Allen in the First National Bank of Albany. At that time all the capital of the bank was invested in United States securities, and it was asserted that a tax upon the individual in respect of the shares he held in the bank was, unless the holdings in United States securities were deducted, a tax upon the securities themselves. But a majority of the court held otherwise, saying by Mr. Justice Nelson: "The tax on the shares is not a tax on the capital of the bank. The corporation is the legal owner of all the property of the bank, real and personal; and within the powers conferred upon it by the charter, and for the purposes for which it was created can deal with the corporate property as absolutely as a private individual can deal with his own. . . . The interest of the shareholder entitles him to participate in the net profits earned by the bank in the employment of its capital, during the existence of its charter, in proportion to the number of his shares; and upon its dissolution or termination to his proportion of the property that may remain of the corporation

after the payment of its debts.  This is a distinct independent interest or property, held by the shareholder like any other property that may belong to him.  Now, it is this interest which the act of Congress has left subject to taxation by the States, under the limitations prescribed."

In an opinion, in which Justices Wayne and Swayne joined, Chief Justice Chase dissented from the judgment upon the ground that taxation of the shareholders of a corporation in respect of their shares was an actual though an indirect tax on the property of the corporation itself.  But the distinction between a tax upon shareholders and one on the corporate property, although established over dissent, has come to be inextricably mingled with all taxing systems and cannot be disregarded without bringing them into confusion, which would be little short of chaos.

The *Van Allen* case has settled the law that a tax upon the owners of shares of stock in corporations in respect of that stock is not a tax upon United States securities which the corporations own.  Accordingly, such taxes have been sustained by this court, whether levied upon the shares of national banks by virtue of the Congressional permission or upon shares of state corporations by virtue of the power inherent in the State to tax the shares of such corporation.  The tax assessed to shareholders may be required by law to be paid in the first instance by the corporations themselves as the debt and in behalf of the shareholder, leaving to the corporation the right to reimbursement for the tax paid from their shareholders, either under some express statutory authority for their recovery or under the general principle of law that one who pays the debt of another at his request can recover the amount from him.  *National Bank* v. *Commonwealth,* 9 Wall. 353; *Lionberger* v. *Rouse,* 9 Wall. 468; *Aberdeen Bank* v. *Chehalis County,* 166 U. S. 440; *Merchants Bank* v. *Pennsylvania,* 167 U. S. 461; *Cleveland Trust Company* v. *Lander,* 184 U. S. 111.  The theory sustaining these cases is that the tax was not upon the corporations' holdings of bonds, but on

the shareholders' holdings of stock, and an examination of them shows that in every case the tax was assessed upon the property of the shareholders and not upon the property of the corporation.[1] There is nothing in them which justifies the tax under consideration here, levied, as has been shown, on the corporate property. Without further review of the authorities it is safe to say that the distinction established in the *Van Allen case* has always been observed by this court, and that, although taxes by States have been permitted which might indirectly affect United States securities, they have never been permitted in any case except where the taxation has been levied upon property which is entirely distinct and independent from these securities. On the other hand, whenever, as in these cases, the tax has been upon the property of the corporation, so far as that property has consisted of such securities, it has been held void.

One other consideration only needs to be noticed. It is said that where a tax is levied upon a corporation measured by the value of the shares in it, it is equivalent in its effect to a tax (clearly valid) upon the shareholders in respect of their shares, because, being paid by the bank, the burden falls eventually upon the shareholders in proportion to their holdings. It was upon this view that the lower court rested its opinion. But the two kinds of taxes are not equivalent in law, because the State has the power to levy one and has not the power to levy the other. The question here is one of power and not of economics. If the State has not the power to levy this tax, we will not inquire whether another tax which it might lawfully impose would have the same ultimate incidence. Precisely the same argument was made and rejected in *Owensboro National Bank* v. *Owensboro*, 173 U. S. 664. There it appeared that a tax upon the intangible property of a national bank had been levied under the name of a franchise tax. Such a tax upon one of the agencies of the

---

[1] This fact assumed but not stated in *Cleveland Trust Co.* v. *Lander* is shown by the record to exist.

National Government is beyond the power of the State. But it was contended that although the tax was not in form upon shares in the hands of shareholders (a tax lawful by the permission Congress has given), it was the equivalent of such a tax. To this contention the court, by Mr. Justice White, replied: "To be equivalent in law involves the proposition that a tax on the franchise and property of a bank or corporation is the equivalent of a tax on the shares of stock in the names of the shareholders. But this proposition has been frequently denied by this court, as to national banks, and has been overruled to such an extent in many other cases relating to exemptions from taxation, or to the power of the State to tax, that to maintain it now would have the effect to annihilate the authority to tax in a multitude of cases, and as to vast sums of property upon which the taxing power is exerted in virtue of the decision of this court holding that a tax on a corporation or its property is not the legal equivalent of a tax on the stock, in the name of the stockholders. . . . If the mere coincidence of the sum of the taxation is to be allowed to frustrate the provisions of the act of Congress, then that act becomes meaningless and the power to enforce it in any given case will not exist. . . . The argument that public policy exacts that where there is an equality in amount between an unlawful tax and a lawful one, the unlawful tax should be held valid, does not strike us as worthy of serious consideration." These words apply with equal force to the case at bar. Moreover, it may be said that, if given the effect claimed, the consideration that the ultimate burden of the tax is distributed upon the shareholders in proportion to their holdings, would have saved the taxes condemned in the *Bank of Commerce* case and the *Bank Tax case,* and indeed all taxes assessed upon the property of corporations, and the immunity from state tax of United States bonds owned by corporations would indirectly be absolutely destroyed.

We regret that we are constrained to differ with the Su-

preme Court of the State on a question relating to its law. But holding the opinion that the law directly taxes national securities, our duty is clear. If by the simple device of adopting the value of corporation shares as the measure of the taxation of the property of the corporation that property loses the immunities which the supreme law gives to it, then national securities may easily be taxed, whenever they are owned by a corporation, and the national credit has no defense against a serious wound.

*Judgments reversed, and cases remanded for further proceedings not inconsistent with this opinion.*

The CHIEF JUSTICE, MR. JUSTICE HARLAN and MR. JUSTICE PECKHAM dissent.