## CITIZENS' & SOUTHERN NAT. BANK v. CITY OF ATLANTA, GA.

### No. 602.

District Court, N. D. Georgia.

Jan. 3, 1931.

Alston, Alston, Foster & Moise, of Atlanta, Ga., and E. W. Moise, of Atlanta, Ga., for plaintiff.

Janes L. Mayson, City Atty., of Atlanta, Ga., for defendant.

SIBLEY, District Judge.

The Citizens' & Southern National Bank, whose home office is in Chatham county, Ga., has a branch bank in the city of Atlanta, Fulton county, Ga., with a definite portion of the general capital and surplus allocated to the branch bank. The real estate of the bank in the city of Atlanta was assessed in 1930 by the city against the bank. The shares of stock in the bank, in proportion to the allocated capital, were at first assessed at their market value, which was higher than the book value; but on proper contest the book value was adopted, being the amount of tangible assets less liabilities. As a credit against this value the bank claimed, under the laws and practices relating to taxation of banks in Georgia, a deduction of the entire value of the branch bank's real estate assessed for

taxation. The city claimed, as to a large office building bought by the bank, subject to an outstanding loan deed, that the deduction ought to be only of the amount the bank had invested in the equity, rather than the whole value of the property. This disputed credit is really the entire contention between the parties, though the argument has covered a wide field. The relief prayed is an injunction against and cancellation of a tax fi. fa. which represents the difference in taxes on the shares arising from the difference in the contested credit, the taxes in respect of the shares having been otherwise paid. In order to set at rest some general points of controversy and perhaps avoid future misunderstanding, a more comprehensive opinion will be expressed.

 Since McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579, the banks of the United States have been considered instrumentalities of the federal government, whose capital, franchises, and operations are therefore not taxable by the states by virtue of state powers of taxation, but only by virtue of such consent as the federal government may give. Owensboro National Bank v. City of Owensboro, 173 U. S. 664, 19 S. Ct. 537, 43 L. Ed. 850. This immunity from state taxation is extended to the ownership of the shares of stock in the banks, although the federal courts and Congress have drawn the broadest distinction between the ownership by the bank of its property and the ownership by the stockholder of his shares. The taxation of the one is not the taxation of the other even when the tax to be collected is of the same amount, and even though the final incidence of the tax is in all cases on the shareholder's profits. Owensboro National Bank v. City of Owensboro, supra. So also where the bank's capital is invested in nontaxable property, as for instance United States securities, the shareholder when taxed in respect of his shares cannot have the value attributable to such securities deducted, although in taxing the bank itself there must be a deduction. Home Savings Bank v. Des Moines, 205 U. S. 503, 27 S. Ct. 571, 51 L. Ed. 901. The permission to tax national banks and their shareholders in force at present is found in 12 U. S. Code, § 548 (12 US CA § 548), as amended by the Act of March 25, 1926, and carefully observes this distinction. It permits no direct taxation of the bank on its property except its real estate, but allows a tax on its net income, or permits taxation of the shares, or of dividends on them to the owner, but any one form of the permitted taxation is in lieu of all the

others. The act expressly provides that realty may be taxed according to value as other realty is taxed. According to the foregoing reasoning and the numerous cases following it, the present assessment appears to be on the property of the bank other than realty, and against the bank and is, on its face, void. But the laws of Georgia themselves seek to tax only the shares of banks, including national banks, and expressly exclude all property of the banks from taxation except their realty (General Tax Act of 1927, § 11; Acts of 1927, p. 99); the shareholders being reached through the banks as their agents, which may properly be done. Home Savings Bank v. Des Moines, supra, at page 511 of 205 U. S., 27 S. Ct. 571. This appears to have been the real purpose in the rather informal return and assessment here involved, and the complainant in the petition expressly waives any claim of invalidity because in form the assessment is apparently against the bank on its property rather than against the shareholders on their shares. We accordingly treat the assessment as made against the shareholders represented by the bank.

The contentions next encountered are that: (1) The shareholders are taxed by the state on their dividends through the income tax statute approved August 22, 1929, and cannot be further taxed on their shares according to the act of Congress above referred to; (2) these shareholders are unequally treated, in that their shares are not credited with the full taxable value of their bank's realty as are those whose bank has fully paid for its realty.

 As to the first contention stated, the city replies that it is an independent taxing district under its charter; that it lays no income tax and is not affected by the state income tax. This reply is not sound. The city of Atlanta exists only by the authority of the state of Georgia, and the city's taxing power is only a delegation of part of the state's taxing power. If the state does anything that alters or destroys its power to tax, the defect reaches to the city's power. If the state destroys its power to tax national bank shares by substituting an income tax, either on the bank or its shareholders, the city loses its delegated power to tax the shares for city purposes. I think, however, such substitution was not the intent of the Georgia Legislature nor the result of its legislation. In interpreting these acts we have a peculiar background that must be held in view. In Georgia there has never been a full operation of the federal view of the separate property interests of corporation and stockholder in

90

matters of taxation. The Georgia Constitution, art. 7, § 2, imperatively requires that taxes shall be "ad valorem on all property subject to be taxed within the territorial limits of the authority levying the tax." The Supreme Court of Georgia has often declared that this means that all property subject to taxation must be so taxed, if any is. Verdery v. Summerville, 82 Ga. 138, 8 S. E. 213; City of Savannah v. Weed, 84 Ga. 683, 11 S. E. 235, 8 L. R. A. 270. Yet shares of stock in domestic corporations are never taxed, the property tax on the corporation being esteemed to be equivalent. Georgia R. R. & Banking Co. v. Wright, 125 Ga. 589, 54 S. E. 52. In Georgia taxation of the corporation is thought of as taxation of the shareholders. Conversely, when it comes to taxing banks, the only instance in which the shares rather than the corporate property are taxed, it is supposed that the taxation of the shareholders satisfies the Constitution as a tax of the bank's property. Indeed, the act taxing the shares (Tax Act 1927, § 11) expressly refers to the surplus and undivided profits of the bank as the means of ascertaining the value of the shares, which necessarily carries us into a consideration of the value of the corporate assets. The concluding words of the section, that branch banks are to be taxed on the value of their capital employed in operations in the county and municipality where located, and the parent bank relieved from taxation to this extent at the home location, was not intended to set up a new scheme of taxing the capital of banks that have branches, whereby these banks would be taxed directly instead of through their shares, but was intended only to apportion the county and municipality taxation of the shares between the home bank and the branch bank in proportion to the capital employed. The loose language is due to the loose Georgia doctrine on the subject. So again, after passing the broad income tax act of August 22, 1929, which might have included the income of banks and of their stockholders, the very next week, August 29, 1929, an act was passed which amended the act taxing bank shares by providing that "banks and trust companies doing a general banking business shall not be required to pay any income tax." I cannot see any reason for the passing of this statute except to escape losing the tax on national bank shares if the small income tax should be collected. While again the language used is loose and inapposite, it was intended to preserve the system of bank taxation which it amended, rather than to destroy it. It is to be noted that this was not an amendment of the income tax act, but of the bank tax act. I hold that the main purpose of the bank tax act, thus amended, is effective as the latest expression of legislative will, and that banks and their shares are not within the income tax law, and the shares of those banks having branches may be taxed in the county and municipality where the branch bank is located in proportion to the capital there employed. This is not prohibited by 12 U. S. Code 548, subd. 2 (12 USCA § 548, subd. 2), as amended by the Act of March 25th, 1926, which declares that shares of national banks owned by nonresidents of the state shall be taxed by the taxing district or by the state where the association is located and not elsewhere. This provision had no reference to branch banks or the apportionment of their taxation within the state. Prior to the Act of February 25, 1927, the only national banks that had branches were state banks which had become national banks and whose capital was apportioned to the branches under 12 U. S. Code, § 36 (12 USCA § 36). Congress merely sought to confine the taxation of all shareholders in national banks to the state or district where the bank was located and protect them from additional taxation in another state even though resident therein.

■ As to the second contention respecting discrimination contrary to the Fourteenth Amendment and the Act of Congress permitting taxation of national banks, there is no discrimination in the Georgia bank tax law against national banks or their shareholders as such. The same law applies to all banks equally. The only discrimination arguable is between stockholders in banks, whether national or state, which own their real estate in fee and those which do not. The act of Congress may, therefore, be laid to one side, for it expressly permits the full taxation of the bank's realty and also the full taxation of the shareholders' shares. The Georgia Legislature, however, again seeing no substantial difference between taxing the bank and taxing its shareholders, decided to credit the taxable value of the shares with the value of the realty assessed to the bank in order to escape what seemed to it to be double taxation. The Georgia bank tax act, in providing for this, directed a credit on the value of the shares of the value of the assessment on the realty where the realty was fully paid for, but of the value of the equity only where not fully paid for. It is exactly what the city of Atlanta did in this case. This is not an arbitrary but a reasonable classification by the Legislature. The shares are to be val-

ued, as we have seen, by recourse to the assets of the bank, which would include its interest in the realty. The part of the assets invested in real estate and to be taxed directly to the bank is to be deducted in valuing the shareholders shares for taxation because already taxed to the bank. The amount invested in the realty, rather than the value of the realty, is the point of the inquiry, because the effort is to get at the values represented by the assets which are not invested in realty. In a legal sense it is no concern of the shareholders what tax is paid by the bank on this realty when the state is fixing the untaxed value to be assessed to the shareholders. Not only is the provision of the Georgia statute reasonable, but the contention of the bank, if allowed, might work very unreasonably. A bank might invest 10 per cent. of its assets in equities in realty the fee in which is worth the entire assets. If the entire value of the realty were to be deducted in valuing the shares, it would result in the shares having no value to be taxed, though 90 per cent. of the bank's assets are still in use in active banking. The bank's sense of injustice done really arises out of the Georgia laws taxing realty whether owned by a bank or by any one else. By these laws the owner of the equity in realty is assessed for the entire tax on the realty. This does not touch the question here involved regarding the valuation of the shareholders' shares. The federal laws expressly permit the realty of national banks to be taxed as other realty is taxed. Indeed, since the Georgia Legislature is not shown to have consented to the acquisition of this realty by the United States or its agencies, perhaps the Congress could not do otherwise. Constitution of the United States, art. 1, § 8(17). The city, therefore, is proceeding according to a valid state law, and an injunction should be refused.