## FIDELITY & GUARANTY FIRE CORPORATION v. STATE TAX COMMISSION

[No. 8, April Term, 1937.]

*Decided March 17th, 1937.*

The cause was argued, as of the January Term, before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, SHEHAN, and JOHNSON, JJ.

*J. Kemp Bartlett, Jr.,* with whom was *J. Kemp Bartlett* on the brief, for the appellant.

*William L. Henderson, Assistant Attorney General,* with whom was *Herbert R. O'Conor, Attorney General,* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

This appeal is from a decree affirming an assessment of the shares of an insurance corporation, the Fidelity and Guaranty Fire Corporation, appellant, owning a large amount of federal securities which, it contends, should have been excluded in the valuation by the State Tax Commission. The assessment is made by the authority and in the manner set out in section 15, Article 81, of the Code, Act of 1929, ch. 226, which is:

15. (a) In computing the assessable value of shares of stock in any national bank located in this state, or in any domestic corporation (other than finance corporations) having a capital stock divided into shares, which are subject to assessment and taxation under this Article, the State Tax Commission shall first ascertain the total aggregate value of the shares of capital stock of such corporation by considering (1) the market value, if any, of the shares of such stock, without reference to sales at abnormal prices, rendering market quotations not a fair index of actual value of the shares of stock as a whole; (2) the net earnings or income of such corporation and, (3) the net value of its assets provided (a) that such aggregate value of the shares of capital stock shall never be ascertained to be less

than the aggregate fair value of all the property and assets of such corporation of whatsoever kind and wheresoever situate, less the indebtedness or other liabilities of such corporation, exclusive of the capital stock, but with a fair allowance for contingent liabilities, and, (b) that such aggregate value of the shares of the capital stock shall never be ascertained to be less than the total value of the real estate and tangible personal property owned by such corporation in this state.

(b) From the amount so ascertained as the total value of the capital stock of such corporation shall be deducted: (1) the assessed value of all real estate assessed to such corporation. (2) If such corporation is a fire insurance company or a life insurance company, the value of any mortgages on any real estate in this state held by it. (3) The net assessed value of shares of stock in any national bank situated in this state or in any domestic corporation which are taxable to the holders under this Article, and the taxes on which are hereunder required to be paid by such national bank or corporation for the account of the holders and which shall have been held by the reporting corporation continuously for more than six months prior to the first of January as of which the report is made. (4) The fair value of property exempt under section 7 (28) of this Article.

(c) After making the deductions specified in paragraph (b) of this section from the total value of the capital stock ascertained under paragraph (a) the residue shall be divided by the number of shares outstanding and the quotient shall be the assessable value of each share.

(d) If two or more classes of stock of such corporation shall be outstanding, the State Tax Commission shall ascertain how much of the total value of the capital stock, after making the deductions specified in paragraph (b) of this section should fairly be distributed to each class and the amount so ascer-

tained shall be divided by the number of such shares of such capital stock outstanding, and the quotient shall be the assessable value of each share of such class of stock.

(e) Shares of stock assessable under this section shall be taxed to the several owners thereof, and the taxes thereon shall be debts of such owners, but may be collected in each case from the bank or other corporation, which shall be bound to pay the same for account of its stockholders, whether or not dividends are declared thereon, as if such corporations were the ultimate taxpayer, but may obtain reimbursement therefor from the respective stockholders, and may charge the same in reduction of any amounts due to the several shareholders as dividends or otherwise.

The Tax Commission found the net valuation of 100,000 shares to be $2,000,000, from which it deducted real estate assessed at $205,120 and tax-paying shares, $80,134, leaving a net valuation for all shares for county and town (outside of Baltimore City) of $1,714,746, or $17.14 a share. The corporation had no real estate mortgages. For Baltimore City the commission made a further deduction of $279,300, being the assessed valuation of certain city stock named in section 17 of article 81, which reduced the valuation per share to $14.35, so that Baltimore City could only collect taxes on the reduced assessment.

The taxpaying shares exempted are as follows:

| No. of Shares | Name of Corporation | Net Assessed Values, 1934 |
|---|---|---|
| 95 shares | Baltimore Natl. Bank, Baltimore | $ 950.00 |
| 500 shares | Cons. Gas, Elec. Light & Power Co. Baltimore, Md., common | 8,115.00 |
| 100 shares | Cons. Gas, Elec. Light & Power Co. Baltimore, Md., 6 % preferred | 3,288.00 |
| 2066 shares | First National Bank, Baltimore, Md. | 55,451.00 |
| 500 shares | Equitable Trust Co., Baltimore, Md. | 5,115.00 |

| | |
|---|---|
| 140 shares Maryland Trust Co., Baltimore, Md. | 95.00 |
| 1000 shares Merchants and Miners Transportation Co. | 7,120.00 |

$80,134.00

Amongst the assets of the appellant were United States Treasury notes and bonds and Federal Land Bank bonds of the par value of $650,000, market value $671,150, all exempt from taxation by federal law.

The facts are agreed to as stated, but on the law the parties disagree. The appellant contends that, no matter what the statute calls the assessment, it is an assessment on the capital stock and not on the shares, and the value of the exempt federal securities should have been deducted from the total valuation, and that the assessment discriminates against the federal securities in favor of other tax exempt property. In support of its contention that the assessment is against the corporation and not on the shares and therefore a direct tax on federal exempt securities, and is discriminatory, the appellant's chief reliance is on the decision in the case of *Schuylkill Trust Co. v. Pennsylvania*, 296 U. S. 113, 56 S. Ct. 31, 80 L. Ed. 91, which the appellees, State Tax Commissioners, contend has no application because the assessment is on the shares and the tax is on the stockholders, and is not discriminatory. As we read the majority opinion in the *Schuylkill* case, the assessment made in pursuance of the Pennsylvania statute offended, (1) because it failed to exempt certain stock held by the corporation in a national bank, and, (2) in measuring the tax it discriminated against corporations owning federal securities in favor of those having stocks exempt from taxation under the laws of Pennsylvania, or already taxed. 49 *Harvard Law Review*, 480.

The exemption of real estate is expressly permitted by the federal statute authorizing the assessment by the states of national bank stocks. Section 5219 of the Revised Statutes; *Mercantile Nat. Bank v. City of New York,*

121 U. S. 138, 7 S. Ct. 826, 30 L. Ed. 895; *Des Moines Nat. Bank v. Fairweather,* 263 U. S. 103, 44 S. Ct. 23, 68 L. Ed. 191. In *Hepburn v. School Directors,* 9 Wall. 468, 23 L. Ed. 112, it was held that the exemption from taxation by statute of "all mortgages, judgments, recognizances, and moneys owing upon articles of agreement for the sale of real estate" did not operate as a discrimination against investments in national bank shares, the court saying: "It could not have been the intention of Congress to exempt bank shares from taxation because some moneyed capital was exempt." *Mercantile Nat. Bank v. New York,* 121 U. S. 138, 151, 7 S. Ct. 826, 30 L. Ed. 895, 900.

In the *Schuylkill* case both opinions agree that the stock of the national bank owned by the trust company should have been exempted by the statute and excluded by the assessor, as section 5219, Revised Statutes, has been interpreted by the Supreme Court. *Bank of California v. Richardson,* 248 U. S. 476, 39 S. Ct. 163, 63 L. Ed. 372. This exemption is required by the Maryland statute (section 15 (b), (3), article 81), and was allowed by the Tax Commission, so in that respect the assessment is not offensive.

In another particular, however, the Pennsylvania and Maryland statutes bear a strong likeness, and very material to the decision in the *Schuylkill case,* and, for the same reason, important in the decision of this appeal. The Pennsylvania statute (see 72 P. S. Pa. sec. 2001) pertaining to the assessment of shares in a trust company, provided that the value of each share of stock should be ascertained by adding together so much of the amount of capital stock paid in, surplus and undivided profits, as is not invested in the shares of stock of corporations liable to pay to the Commonwealth a capital stock tax or tax on shares, and dividing the sum by the number of outstanding shares. In addition to such taxpaying corporations, the Act (see 72 P. S. Pa. sec. 1892) excluded from assessment manufacturing, laundering and meat-packing corporations, limited partnership and

joint stock associations, which are tax-exempt. In declaring these exemptions to invalidate the law and the assessment, the court, (296 U. S. 113, 120, 56 S. Ct. 31, 35, 80 L. Ed. 91, 97), said: "We think that the issue of discrimination is not to be resolved by a choice between the two contentions as to the nature of the tax, whether the exaction be from the company or its shareholders. * * * The state has exempted certain assets on the theory that to measure the tax in part by their value would in effect be to tax them twice. If to measure the shareholders' tax by inclusion of these taxed or exempted securities found amongst the company's assets would be to tax the shareholder in virtue of the company's ownership of these securities, it seems clear that to refuse to exempt United States securities from the measure of the tax is to lay a tax reckoned upon their value. To put it otherwise, if to exclude securities already taxed or exempted from tax pursuant to the policy of the Commonwealth avoids double taxation, to include United States securities in the measure of the tax seems inevitably to increase the burden of the tax by reason of their ownership. If the burden of the tax be lifted in respect of some securities (as it is by confession from those issued by certain Pennsylvania corporations) it must necessarily fall on the remaining securities owned by the company. If the tax is lifted from the shares of certain trust companies because those companies own only stocks already taxed or relieved from taxation by the State, and shares in other trust companies are taxed amongst whose assets there are United States bonds or other securities entitled to exemption because issued by federal instrumentalities, which are figured in the base of the tax, it is impossible to avoid the conclusion that the law discriminates in favor of the former and against the latter, solely by reason of ownership of such federal securities."

The quoted portion of the Schuylkill opinion seems to declare that a state, in valuing the stock of a corporation for purposes of taxation, cannot exempt any of its securities, whether tax exempt or not, when amongst its assets

are national bank stocks or federal securities, unless they also are exempted, in which event the local tax exempt property or securities would also be exempted. In other words, the federal policy seems to be with respect to the taxing of shares in domestic corporations owning national bank shares, federal securities, tax exempt or already taxed shares, to tax all or omit the national bank stocks and federal securities. In holding, in the *Schuylkill* case, that Pennsylvania could not exempt the stock of tax exempt manufacturing corporations and include federal securities in the computation of the tax, it appears to us to have followed *MacAllen v. Massachusetts*, 279 U. S., 620, 628, 49 S. Ct. 432, 434, 73 L. Ed. 874, 878, which qualified *National Life Ins. Co. v. United States,* 277 U. S. 508, 48 S. Ct. 591, 72 L. ed. 968, and to oppose *Adams v. Nashville,* 95 U. S. 19, 24 L. ed. 19, where it was said, "the Act of Congress was not intended to curtail the state power on the subject of taxation. It simply required that capital invested in national banks should not be taxed at a greater rate than like property similarly invested. It was not intended to cut off the power to exempt particular kinds of property if the legislature chose to do so." See *Mercantile Nat. Bank v. City of N. Y.,* 121 U. S. 138, 150, 7 S. Ct. 826, 30 L. ed. 888, 900. But *Schuylkill Trust Co. v. Pennsylvania,* 296 U. S. 112, 56 S. Ct. 31, 80 L. ed. 91 is the last word on the subject, which this court is not only required to recognize, but obliged to follow.

In the assessment here complained of there were included 600 shares of stock of the Consolidated Gas, Electric Light and Power Company, valued at $11,403; 500 shares of stock of the Equitable Trust Company of Baltimore, valued at $5,115; and 140 shares of stock of the Maryland Trust Company, valued at $95; and 1000 shares of stock of the Merchants and Miners Transportation Company, valued at $7,120; which had been assessed to the owners and deducted from the total valuation under section 15 (b) (3) of Article 81.

The deduction, so far as it affects the tax in Balti-

more City, of its stock (or bonds), was made by the authority of section 17 of article 81, by which it was provided that "the State Tax Commission shall determine the value of any stock debt of the City of Baltimore of the character hereinafter in this section described, and shall deduct from the value as determined under the provisions of section 15 of this article of the shares of stock of said corporation taxable in the City of Baltimore such proportion of the value of said stock debt of the City of Baltimore as the shares of stock of such corporation taxable in the City of Baltimore bear to the total outstanding taxable shares of stock in said corporation, and the city tax calculated upon the residue shall be the true amount of taxes payable to the City of Baltimore on shares of capital stock of such corporation." The chancellor held the city stock exemption to be "defensible, since the city's revenues only are affected, and elsewhere city securities and federal bonds stand upon an equal footing." It may, as suggested, help city stock in the market, but in this case it serves to reduce the entire assessment by resulting in an assessment of $17.14 per share for county and town purposes, and $14.35 in Baltimore City.

So far as domestic assessments are concerned, this State has the right to say what property may be exempted from taxation (*Adams v. Nashville*, 95 U. S. 19, 24 L. Ed. 19; *Hepburn v. School Directors*, 9 Wall. 468, 19 L. Ed. 721; *Mercantile Nat. Bank v. New York*, 121 U. S. 138, 151, 7 S. Ct. 826, 30 L. Ed. 895, 900), as such legislation does not become ineffective, obnoxious, or inoperative until it discriminates against federal securities or national bank stock. *Bank of California v. Richardson*, 248 U. S. 476, 39 S. Ct. 165, 63 L. Ed. 372.

The objectionable items excluded by the Tax Commission, which, if they had been included, avoid the assessment, do not wholly invalidate the Act in so far as it applies to this assessment, as provision was made for just such a contingency by one of the enacting clauses of the Act of 1929, sec. 13, which says: *"And, be it enacted,*

That if any section of this Act or any provision of any section of this Act, or the application thereof to any person or circumstances or section of the Code of Public General Laws enacted or re-enacted or amended by this act, or any provision of any such section, or the application thereof to any person or circumstances, is held invalid, the remainder of the Act and of said section of the Act or of said section of the Code of Public General Laws and the application thereof to other persons or circumstances shall not be affected thereby; and if any exemption or exception from any tax is held invalid, the tax shall apply without such exemption or exception."

The effect, therefore, of this opinion is that this assessment is invalid only in so far as it excluded the valuation of the stock of domestic corporations, the stock of which had been assessed to their shareholders, and the city stock. If these had been included in the valuation of the stock of the appellant, the assessment complained of could not have been regarded as an unfriendly discrimination against the federal securities which have been assessed in this case, as we read the majority opinion in the case of *Schuylkill Trust Co. v. Pennsylvania*, 296 U. S. 113, 56 S. Ct. 31, 34, 80 L. Ed. 91. Our decision also brings this case squarely within the rules laid down in *Van Allen v. Assessors*, 3 Wall. 573, 18 L. Ed. 229; *Cleveland Trust Co. v. Lander*, 184 U. S. 111, 22 S. Ct. 394, 46 L. Ed. 456; *Bank of California v. Richardson*, 248 U. S. 476, 39 S. Ct. 165, 63 L. Ed. 372; *Des Moines Nat. Bank v. Fairweather*, 263 U. S. 103, 44 S. Ct. 23, 68 L. Ed. 191; *Educational Films Corp.* 282 U. S. 379, 51 S. Ct. 170, 75 L. Ed. 400; and *Pacific Co. v. Johnson*, 285 U. S. 480, 52 S. Ct. 424, 76 L. Ed. 893.

There is always, in these cases, the question as to whether the assessment is a tax on shares or on the capital stock of the corporation. If the latter, the tax is regarded as a tax directed against the tax exempt securities owned by the corporation. *Home Savings Bank v. Des Moines*, 205 U. S. 503, 51 L. Ed. 901. The states, however, do have the right to assess shares of a corpora-

tion in the hands of a stockholder, even though the corporation is at the same time the owner of federal securities which enter in the valuation of the shares, on the theory that a shareholder, as such, has no ownership in the assets of a corporation so long as it be a going concern. *Van Allen v. Assessors*, 3 Wall. 573, 584; *Cotten v. Tyson*, 121 Md. 597, 604. In order to ascertain whether the tax is imposed on the shareholder or on the assets of the corporation, "We must inquire whether the law really imposes a tax upon the shares of stock as the property of the owners, or merely adopts the value of those shares as the measure of valuation of the property of the corporation and by that standard taxes the property itself. The result of this inquiry is of vital importance because there may be a tax on the shares of a corporation, which are property distinct from that owned by the corporation, and with a different owner, without an allowance of the exemption due to the property of the corporation itself, while, if the tax is upon the corporation's property, all exemptions due it must be allowed. *Home Savings Bank v. Des Moines*, 205 U. S. 503, 510, 27 S. Ct. 571, 51 L. Ed. 901, 906; 84 Univ. of Pa. Law Rev. 761; 49 Harvard Law Rev. 480.

In the case of *Home Savings Bank v. Des Moines, supra*, the Act began by authorizing a tax upon "shares of stock of state and savings banks and loan and trust companies," and ended by saying the tax was to be "assessed to such banks * * * and not to the individual stockholders," and the tax was there held to be on capital and not on shares of the stockholders.

Subsection (e) of section 15, article 81, provides that "shares of stock assessable under this section shall be taxed to the several owners thereof and the taxes thereon shall be debts of such owners, but may be collected in each case from the bank or other corporation, which shall be bound to pay the same for account of its stockholders whether or not dividends are declared thereon, as if such corporations were the ultimate taxpayer, but may obtain re-imbursement therefor from the respective stockholders

and may charge the same in reduction of any amounts due to the several stockholders."

"The first step useful in the solution of this question (*Home Savings Bank v. Des Moines,* 205 U. S. 503, 510, 27 S. Ct. 571, 51 L. Ed. 901, 906) is to ascertain with precision the nature of the tax in controversy and upon what property it was levied, and that step must be taken by an examination of the taxing law as interpreted by the supreme court of the state." The interpretation of such a law as ours was most clearly and forcibly expressed by Judge McSherry in *U. S. Elec. Light & Power Co. v. State,* 79 Md. 63, 70, where he said: "The tax is not a tax upon the stock or upon the corporation, but upon the owners of the shares of stock, though the officers of the corporation are made the agents of the state for the collection of the state tax. It is immaterial what assets or other property make up the value of the shares of the corporation. Those shares are property and, under existing laws, are taxable property. They belong to the stockholders respectively and individually, and when for the sake of convenience in collecting the tax thereon the corporation pays the state tax upon those shares into the state treasury it pays the tax, not upon the company's own property, nor for the company, but upon the property of each stockholder and for each stockholder respectively, by whom the company is entitled to be re-imbursed. Hence, when the owner of shares is taxed on account of his ownership and the tax is paid for him by the company, the tax is not levied upon or collected from the corporation at all." See *Crown Cork & Seal Co. v. State,* 87 Md. 687; *Union Trust Co. v. Belvidere,* 105 Md. 507; *Union Trust Co. v. State,* 116 Md. 368.

The distinction between a tax on capital stock and one on shares was not only expressed but illustrated in *Havre de Grace v. Havre de Grace & Perryville Bridge Co.,* 145 Md. 491, 125 A. 704. The Legislature had passed an act in 1908 exempting the company "from the payment of any and all county and municipal taxes," and it was there held that this exemption did not extend to the share-

holders of the bridge company against whose shares taxes had been levied.

The majority opinion in the *Schuylkill* case does not pass upon the effect of the verbiage of the statute as showing whether the tax is on shares or capital. It does discuss it, however, saying: "It should be stated that under the Act the corporation is required to make a report as a basis for the calculation of the tax and, upon that report, the Department of Revenue settled the tax which is assessed against the corporation. The trust company and not the stockholders, is liable in the first instance for the tax. Though given the right to pay the tax from its funds or collect the amount from its stockholders, neither the company nor the Commonwealth is given any lien on the stock for the amount of the tax." We do not find anything in the Pennsylvania Act which declares the assessment to be against the trust company; it does make it the collector of the tax and imposes this duty on it. It is suggested, though not decided, that there should be a lien reserved on the stock in order to make the assessment binding on the shareholder and a tax on him rather than on the corporation. The distinction between a tax on capital and on shares, and whether this can here be called an assessment against the corporation, very clearly appears from the case of *Hull v. Southern Development Co.*, 89 Md. 8, wherein the county tax collector had advertised the real estate of the corporation charged with the payment of taxes assessed against its shareholders under the provisions of the Act of 1896, ch. 120, Code of 1904, ch. 81, sec. 159, containing substantially the same provisions as section 15 of article 81, and on exceptions to the sale, which were sustained, this court, though dismissing the appeal, expressed its opinion on the merits of the case. The remedy for collection then was under the Act of 1880, ch. 244, sec. 88a (Art. 81, Code of 1904), and is the same as now prescribed by sections 145-150 of article 81 (Acts of 1929, ch. 226). This court there said "The sole liability of the corporation grows out of the statutory duty to collect, and not

out of its failure to pay a tax primarily due by it. The corporation owes the money to the county not as taxpayer, but as tax collector, and the prescribed process against the one is not available against the other. A failure to perform this imposed duty creates a cause of action which will justify a recovery in a proper form of action. As was said by this court in construing this very statute in *American Coal Co. v. Allegany County*, 59 Md. 197, 'the statute having created the duty and obligation to pay, when the shares of stock are assessed to the individual owners, that duty and obligation, on the part of the corporation may be enforced by a proper action at law—the plaintiff, in such case, showing the right claimed to be within the provisions of the statute.' Until a judgment is obtained against the corporation and an execution is issued thereon, the property owned by the corporation cannot be sold for the payment of the amount due to the county as the tax on the shares owned by the stockholders. A sale thus made would be a sale by the sheriff in virtue of legal process, and not a sale by the Tax Collector."

In the light of the decisions of this court so cited and quoted, we have no doubt that the statutory characterization of the assessment as on the shares, and the tax on the shareholder, is correct in law and in fact.

The decree will be reversed and the cause remanded for an order remanding the assessment to the State Tax Commission for a re-assessment to conform with this opinion.

*Decree reversed and case remanded.*

PARKE, J., does not concur.

*On Re-argument.*

On the re-argument of this case, the majority of the Court adheres to the opinion of the Court heretofore filed on the original argument.

Filed July 15th, 1937.